SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------X
:
HICKEY FREEMAN TAILORED  :
CLOTHING, INC.,  :
  :
               Plaintiff,  :   Index No. _____
  :
           -against-  :
  :
CHARGEURS, S.A., LAINIÉRE DE  :   **SUMMONS**
PICARDIE BC SAS, LAINIÉRE DE  :
PICARDIE INC., LAINIÉRE DE PICARDIE  :
(WUJIANG) TEXTILES CO. LTD, AND  :
VERATEX LINING LTD,  :
  :
               Defendants.  :
  :
-----------------------------------------------------------X

      **YOU ARE HEREBY SUMMONED** and required to serve upon plaintiff's attorneys an answer to the complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York.  In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

      This action will be heard in the Supreme Court of the State of New York in and for the County of New York.  The basis of the venue designated is the plaintiff's principal place of business.

Dated:  New York, New York
        June 23, 2017

                LOEB & LOEB LLP

        By: */s/ Wook Hwang*
            Wook Hwang
            Frank D. D'Angelo
            345 Park Avenue
            New York, New York 10154
            (212) 407-4000

*Attorneys for Plaintiff*
*Hickey Freeman Tailored*
*Clothing, Inc.*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------X
                                                       :
HICKEY FREEMAN TAILORED                                :
CLOTHING, INC.,                                        :
                                                       :
                    Plaintiff,                         :   Index No. _____
                                                       :
         -against-                                     :
                                                       :
CHARGEURS, S.A., LAINIÉRE DE                           :   **COMPLAINT**
PICARDIE BC SAS, LAINIÉRE DE                           :
PICARDIE INC., LAINIÉRE DE PICARDIE                    :
(WUJIANG) TEXTILES CO. LTD, AND                        :
VERATEX LINING LTD,                                    :
                                                       :
                    Defendants.                        :
-----------------------------------------------------X

       Plaintiff Hickey Freeman Tailored Clothing, Inc. ("Hickey Freeman"), by and through its attorneys, Loeb & Loeb LLP, as and for its Complaint against Defendants Chargeurs, S.A. ("Chargeurs"), Lainiére de Picardie BC SAS ("Lainiére France"), Lainiére de Picardie Inc. ("Lainiére US"), Lainiére de Picardie (Wujiang) Textiles Co. Ltd ("Lainiére Textiles"), and Veratex Lining Ltd ("Veratex") (collectively, "Defendants"), alleges as follows:

**NATURE OF ACTION**

       1.     This action arises out of Defendants' sale of large quantities of defective garment materials known as "fusible interlining" to Hickey Freeman for use in the manufacture of its premium Hickey Freeman men's suits, in violation of Defendants' contract with Hickey Freeman, the express and implied warranties given in connection with Defendants' provision of this defective material, and Defendants' most basic duties of care.

       2.     Plaintiff Hickey Freeman is the manufacturer of men's luxury clothing under the world famous Hickey Freeman brand. Critical to the crisp appearance and structural integrity of

Hickey Freeman suits is its use of a material knowing as "fusible interlining," a reinforcing lining placed in the interior of suit jackets that is coated with adhesive resin on one side, which is then "fused" to an interior layer of the jacket.

3.   Chargeurs Fashion Technologies ("CFT"), a division of Defendant Chargeurs, bills itself as one of the world's leading manufacturers and distributors of fusible interlining, operating through Chargeurs' direct and indirect subsidiaries, Defendants Lainiére France, Lainiére US and Lainiére Textiles, to manufacture and sell interlining under the CFT brand. CFT and its constituent entities sell CFT-manufactured interlining directly to customers or, in the case of Hickey Freeman, through its distributor and agent Veratex.

4.   In December 2016, pursuant to purchase orders previously placed with Veratex, Hickey Freeman received a shipment of CFT interlining that proved to be entirely defective. Contrary to prior representations made by Defendants, and contrary to the most basic of industry-accepted standards, this batch of CFT interlining suffered a defect known in the industry as "strike-back," in which the "fusing" resin coated to one side of the interlining permeates (or "strikes back") through the interlining fabric itself during the suit manufacturing process, causing layers of the suit jacket to stick together in areas they should not, and thus defeating the very purpose for which this interlining is used. Thousands of Hickey Freeman suits were manufactured using CFT's defective interlining, and were damaged thereby.

5.   The reason for the defect soon became clear. During a May 5, 2017 presentation given at an international industry conference in Milan, a Chargeurs Fashion Technologies executive freely admitted that it was not conducting proper quality control of its interlining:

> We have to test, we have to allow ourselves time to test the interlining on the fabric… ***We very frequently face the situation where we just don't have time to test the interlining on the fabric… We don't have time—just the pure time—in the fashion industry flow to do our job properly***.

2

6. Before Hickey Freeman was able to discover the defect, it had manufactured thousands of premium men's suits using the defective CFT interlining and sold those suits to some of Hickey Freeman's most important retailer clients. Hickey Freeman's customers, accustomed to the highest standards from Hickey Freeman clothing, have rejected and returned these suit shipments that were manufactured using the defective CFT interlining.

7. As a result of Defendants' disregard for the most basic of quality control measures, and the consequent shipment of defective CFT interlining to Hickey Freeman, Hickey Freeman has suffered significant losses arising from return shipments from its customers, lost sales and profits, and substantial reputational harm and loss of goodwill. By this action, Hickey Freeman seeks recovery of these and other categories of compensatory, incidental and consequential damages. Hickey Freeman further seeks punitive damages against Defendants as a result of their knowing, wanton and reckless disregard for basic quality control standards with respect to the CFT interlining that Defendants sell in New York and the United States and, indeed, throughout the world.

## PARTIES

8. Plaintiff Hickey Freeman is a New York corporation with principal places of business in Rochester, New York and New York, New York.

9. Upon information and belief, Defendant Chargeurs is a French corporation with its principal place of business in Paris, France. Upon information and belief, Chargeurs operates and maintains CFT as one of Chargeurs' four consolidated operating divisions, each of which is overseen and managed by Chargeurs directly.

10. Upon information and belief, Defendant Lainiére France is a French corporation with its principal place of business in Buire-Courcelles, France. Upon information and belief,

Lainiére France is a direct or indirect subsidiary of Defendant Chargeurs within its CFT division, and directs and manages the manufacture and sale of CFT-branded products throughout the world.

11. Upon information and belief, Defendant Lainiére US is a Delaware corporation with its principal place of business in Pennsylvania. Upon information and belief, Lainiére US is a direct or indirect subsidiary of Defendant Chargeurs within its CFT division, and markets and sells CFT-branded products in New York and throughout the United States.

12. Upon information and belief, Defendant Lainiére Textiles is a Chinese corporation with its principal place of business in Suzhou, China. Upon information and belief, Lainiére Textiles is a direct or indirect subsidiary of Defendant Chargeurs within its CFT division, and manufactures CFT-branded products that are sold in New York and throughout the United States.

13. Upon information and belief, Defendant Veratex is a Canadian corporation with its principal place of business in Montréal, Québec. Upon information and belief, Veratex is a distributor of CFT-branded products sold in New York and throughout the United States, and in that capacity serves as agent for Defendants Chargeurs, Lainiére France, Lainiére US and Lainiére Textiles.

**JURISDICTION AND VENUE**

14. This Court has jurisdiction over this matter pursuant to CPLR §§ 301 and 302 because, among other things, each of the Defendants does, transacts and solicits business within New York and supplies goods and services within New York giving rise to this action and the acts set forth herein; knew such acts would have consequences in New York; and derives

substantial revenue from interstate and international commerce, including the provision of goods and services in New York that are at issue in this action.

15. Venue in New York County is proper pursuant to CPLR §§ 501, 503 and 509.

## FACTUAL ALLEGATIONS

**Chargeurs' Fusible Interlining Business**

16. Fusible interlining is a lining component used in various types of garments, including the premium men's suits manufactured by Hickey Freeman. In the case of the CFT interlining at issue herein, one side of the interlining is coated with thermoplastic adhesive resin. The interlining is placed in the interior of the suit jacket and, when heated during the suit manufacturing process, the adhesive coating "fuses" to the interior side of the outermost jacket layer, reinforcing that layer and thereby giving the jacket a smooth, uniform appearance.

17. Chargeurs, through its operating division CFT, bills itself as one of the world's leading manufacturers and sellers of fusible interlining. Chargeurs' CFT division, according to its website, "is one of the world leaders in interlinings for the menswear garment industry." (http://www.chargeurs-fashion-technologies.com/products).

18. Chargeurs' CFT division operates through various manufacturing and marketing subsidiaries located throughout the world, including Defendants Lainiére France, Lainiére US and Lainiére Textiles. As its website explains:

> Chargeur Fashion Technologies' interlining gives shape and structure to the garments sold by over 1,600 luxury, ready-to-wear and fast-fashion brands. Its global footprint, with eight plants and 18 marketing subsidiaries, enables it to offer a local service to every customer in a highly mobile apparel industry.

(http://www.chargeurs.fr/en/content/chargeurs-fashion-technologies).

19. Chargeurs' website specifically touts its technical expertise in interlining manufacture, explaining that interlining is "the only technical fabric used in a garment" and that

5

"[t]he technology requires high level expertise for its development…." (*Id.*). In particular, Chargeurs advertises the superiority of its fusible coating technology: "Interlining is generally hot-fused between the fabric and the lining, to help jackets, coats, shirts and blouses to retain their shape and structure. The division's chemists and textile engineers develop and apply the coating technology used to manufacture the interlining." (*Id.*).

20. Further touting this technological expertise, Chargeurs specifically advertises the ability of its fusible coating technology to address the issue of "strike-back," a defect that occurs when, during the garment manufacturing process, the adhesive resin coated to one side of the interlining permeates, or "strikes back," through the interlining fabric onto the other side of the interlining fabric. As Chargeurs' CFT-dedicated website states:

> Our coating processes are our core competences. Our competitive advantage is based on our capacity to master different coating technologies, offering a wide range of possibilities to our customers. Chargeurs Interlining has developed and launched the GMP (Global Molecular Point) coating. <u>It is a patented technology which tackles the strike-back problems during the fusing process and significantly improves the coating performance</u>.

(*See* http://www.chargeurs-fashion-technologies.com/products). Avoiding strike-back is critical because it inadvertently creates adhesive surfaces on both side of the interlining, effectively causing the interior layers of the jacket to stick to one another when they should not.

21. Despite touting its superiority in the interlining business, and contrary to these representations, Chargeurs and the constituent entities within its CFT division, including Defendants Lainiére France, Lainiére US and Lainiére Textiles, do not provide the quality represented on its website or even the baseline level of quality necessary to ensure that its interlining is fit for use in the manufacture of retail garments.

22. Indeed, on May 5, 2017, a Chargeurs executive gave a presentation at the annual convention of the International Association of Clothing Designers and Executives ("IACDE") in

6

Milan, in which he freely admitted that Chargers' CFT division and its constituent entities do *not* engage in the level of quality control that is necessary to ensure that the interlining sold to their customers worldwide meets basic quality control standards:

> We have to test, we have to allow ourselves time to test the interlining on the fabric… ***We very frequently face the situation where we just don't have time to test the interlining on the fabric…*** Today, we are faced with challenges: ***we don't have time—just the pure time—in the fashion industry flow to do our job properly***.

**Defendants' Marketing and Sale of Defective Chargeurs Interlining to Hickey Freeman**

23.  Hickey Freeman manufactures and sells premium men's suits across the United States and throughout the world, both directly to consumers in Hickey Freeman stores and though high-end retail stores.

24.  For years, Hickey Freeman has purchased Chargeurs' fusible interlining for use in its men's suits through Defendant Veratex, a distributor of Chargeurs interlining and, in that capacity, an agent of Defendants Chargeurs, Lainiére France, Lainiére US and Lainiére Textiles.

25.  At multiple times during the parties' business relationship, Defendants' representatives traveled to Hickey Freeman's offices in Rochester, New York and in Montreal, Quebec, to meet with Hickey Freeman representatives and market Chargeurs' interlining for use in Hickey Freeman suits. These representatives included Barry Diamond, Veratex's Managing Director, and Fran Natale, a sales representative for Defendants Chargeurs, Lainiére France and Lainiére US.

26.  Upon information and belief, Mr. Natale is an employee of Defendants Chargeurs, Lainiére France and/or Lainiére US.

27.  During these meetings with Hickey Freeman, Mr. Natale represented himself to be an authorized representative and agent of Defendants Chargeurs and represented that the interlining he marketed to Hickey Freeman was a product of Defendant Chargeurs.

7

28. During these meetings with Hickey Freeman, Mr. Diamond represented that Veratex was an authorized distributor and agent of Defendant Chargeurs and that the interlining he marketed to Hickey Freeman was a product of Defendant Chargeurs.

29. At these meetings and on numerous other occasions, Defendants' representatives, including Mr. Natale and Mr. Diamond, represented that Chargeurs' interlining would satisfy the highest quality control standards and would *not* cause "strike-back" problems of the type specifically addressed on Chargeurs' websites.

30. Defendants also provided Hickey Freeman with samples of Chargeurs' interlining for extensive testing so as to ensure, among other things, that strike-back would not occur on Chargeurs' interlining during the manufacturing process of Hickey Freeman suits. Defendants were aware that Hickey Freeman was conducting these tests and that the reason for these tests was, among other things, to ensure that strike-back would not occur.

31. In reliance upon Defendants' representations, and in reliance upon this testing confirming that strike-back would not occur, Hickey Freeman purchased and continued to purchase fusible interlining from Defendants to use in its premium men's suiting.

32. On or about September 23, 2016, Hickey Freeman issued a purchase order to Vertex for 4000 meters of Chargeurs' fusible interlining.

33. Veratex, as distributor and agent of Defendants Chargeurs, Lainiére France, Lainiére US and Lainiére Textiles, accepted Hickey Freeman's purchase order and, pursuant thereto, made four (4) separate shipments of the Chargeurs interlining to Hickey Freeman between October 31, 2016 and January 20, 2017, which were invoiced to and paid for by Hickey Freeman.

34. This interlining was purchased by Hickey Freeman in reliance on prior representations made by Defendants Chargeurs, Lainiére France, Lainiére US and Veratex, including representations made by their agents Fran Natale and Barry Diamond, that the Chargeurs interlining would not suffer from strike-back.

35. Upon information and belief, Defendant Lainiére Textiles manufactured the Chargeurs interlining included in these shipments.

36. Prior to receiving these shipments, Hickey Freeman, to the best of its knowledge, had not received any defective shipments of fusible interlining from Defendants and had not experienced manufacturing problems relating to Defendants' fusible interlining.

37. At no time prior to their use in the manufacture of Hickey Freeman suits did Defendants or their agents advise Hickey Freeman not to use the interlining included in these shipments, or to employ specific manufacturing processes that diverged from the processes used on prior interlining shipments Hickey Freeman had received from Defendants or from industry-standard manufacturing specifications or processes.

38. As a result, Hickey Freeman used thousands of meters of interlining included in these shipments in the manufacture of its men's suits, using its standard manufacturing processes.

39. Hickey Freeman subsequently discovered that this batch of Chargeurs interlining was defective and had resulted in "strike-back" during the fusing process. Specifically, the "fusing" resin permeated through the interlining fabric during Hickey Freeman's standard manufacturing process, causing the interior layers of its suit jackets to stick to one another.

40. By the time it discovered the defect, thousands of Hickey Freeman suits had been manufactured using this defective batch of Chargeurs interlining and were damaged thereby.

Before it was aware of the problem, these suits had already been sold to Hickey Freeman's customers.

41. Upon learning of the defect, Hickey Freeman immediately notified Defendants. Mr. Natale and Mr. Diamond visited Hickey Freeman's manufacturing facilities in Rochester, New York. Together with Hickey Freeman employees, Mr. Natale and Mr. Diamond tested the defective Chargeurs interlining against interlining from Defendants' competitors in sample production runs. The Chargeurs interlining again resulted in strike-back, while the interlining from Defendants' competitors did not, confirming that the Chargeurs interlining included in the recent shipment was, in fact, defective, and not the result of any other manufacturing anomalies.

42. As a result, Defendants requested that Hickey Freeman return the unused portions of the defective interlining shipments and credited Hickey Freeman for the cost, acknowledging that the shipment was defective. By this time, however, Hickey Freeman had manufactured thousands of men's suits using the defective Chargeurs interlining and sold them to its customers.

**Hickey Freeman's Damages Arising from Its Use of Chargeurs' Defective Interlining**

43. Hickey Freeman's retailer customers have notified Hickey Freeman of issues in the appearance and quality of the suits that were manufactured using the defective Chargeurs interlining.

44. Among other things, Hickey Freeman has been advised that these Hickey Freeman suits had to be removed from the retail floor after customers complained about their quality and appearance.

45. As a result, thousands of Hickey Freeman's suits manufactured using the defective Chargeurs interlining have been returned to Hickey Freeman. Hickey Freeman has had no choice but to accept these returns and issue refunds for them.

46. Moreover, Hickey Freeman has incurred significant reputational harm and loss of goodwill among its customers as a direct consequence of the defective Chargeurs interlining. As a result, Hickey Freeman has lost market share in its product segment vis-à-vis its competitors.

## FIRST CAUSE OF ACTION
### (Against All Defendants)
### (Breach of Contract/Implied Covenant of Good Faith and Fair Dealing)

47. Hickey Freeman repeats and re-alleges each and every allegation set forth in paragraphs 1 through 46 as if fully set forth herein.

48. By reason of the purchase order placed by Hickey Freeman and Defendants' shipment of goods in acceptance of that order, a valid and binding contract formed between Hickey Freeman and Defendants.

49. Hickey Freeman has complied with all of its obligations under such contract, both express and implied.

50. Defendants materially breached their contract with Hickey Freeman and/or the implied covenant of good faith and fair dealing inherent therein by supplying to Hickey Freeman defective interlining, which did not fulfill its essential purpose, provided none of the standard benefits of fusible interlining, and damaged Hickey Freeman's finished garments fabric that Defendants knew and foresaw would be sold to Hickey Freeman's retailer clients and retail customers.

51. By reason of the foregoing, Hickey Freeman has suffered and is entitled to damages in an amount to be determined at trial, but in no event less than $3 million, plus interest thereon at statutory rate of nine percent per annum, together with costs.

52. Moreover, the gross, wanton, and reckless nature of Defendants' conduct, aimed at the public generally, warrants an award of punitive damages in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
**(Against All Defendants)**
**(Breach of Express Warranty)**

53. Hickey Freeman repeats and re-alleges each and every allegation set forth in paragraphs 1 through 52 as if fully set forth herein

54. At various times during the parties' business relationship, Defendants' representatives represented to Hickey Freeman that Chargeurs' interlining would satisfy the highest quality control standards and would not cause "strike-back" problems. Similar representations were made on the websites operated by Defendant Chargeurs with respect to interlining manufactured, marketed and sold by Defendants.

55. Hickey Freeman relied upon these express warranties in placing an order for Defendants' interlining, which became part of the basis of the bargain between Hickey Freeman and Defendants, and are part of the contract between them.

56. Defendants breached their express warranties because their statements as to the quality and reliability of Chargeurs fusible interlining were false, and the Chargeurs interlining supplied to Hickey Freeman did not conform to Defendants' affirmations and promises described above.

57. Hickey Freeman would not have purchased the Chargeurs interlining at issue herein had it known of the defects and of Defendants' egregious and admitted failure to implement baseline quality controls to test or inspect the same.

58. Within a reasonable time after it knew or should have known of such breach of express warranty, Hickey Freeman placed Defendants on notice thereof.

59. As a direct and proximate result of the foregoing, Hickey Freeman has suffered and is entitled to damages in an amount to be determined at trial, but in no event less than $3 million, plus interest thereon at statutory rate of nine percent per annum, together with costs.

60. Moreover, the gross, wanton, and reckless nature of Defendants' conduct, aimed at the public generally, warrants an award of punitive damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Against All Defendants)**
**(Breach of Implied Warranty of Merchantability and Fitness)**

61. Hickey Freeman repeats and re-alleges each and every allegation set forth in paragraphs 1 through 60 as if fully set forth herein.

62. Defendants are in the business of designing, manufacturing, marketing, distributing, selling and/or placing into the stream of commerce fusible interlining to garment manufacturers such as Hickey Freeman.

63. Hickey Freeman purchased fusible interlining from Defendants.

64. At all relevant times, Defendants knew of the uses for which the interlining purchased by Hickey Freeman was intended, and impliedly warranted this interlining to be of merchantable quality and fit for the ordinary purpose for which interlining is used.

65. Hickey Freeman reasonably relied upon said implied warranty of merchantability and fitness.

66. Defendants' breached these implied warranties because the Chargeurs interlining shipped to Hickey Freeman was defective, not of merchantable quality, would not pass without objection in the trade, and was not fit for its ordinary purposes.

67. Within a reasonable time after it knew or should have known of such breach of these implied warranties, Hickey Freeman placed Defendants on notice thereof.

68. As a direct and proximate result of the foregoing, Hickey Freeman has suffered and is entitled to damages in an amount to be determined at trial, but in no event less than $3 million, plus interest thereon at statutory rate of nine percent per annum, together with costs.

69. Moreover, the gross, wanton, and reckless nature of Defendants' conduct, aimed at the public generally, warrants an award of punitive damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION (IN THE ALTERNATIVE)
### (Against Chargeurs, Lainiére France, Lainiére US and Lainiére Textiles)
### (Strict Products Liability)

70. Hickey Freeman repeats and re-alleges each and every allegation set forth in paragraphs 1 through 69 as if fully set forth herein.

71. Each of the Defendants is responsible for designing, manufacturing, marketing, distributing, selling and/or placing into the stream of commerce the defective Chargeurs interlining purchased by Hickey Freeman.

72. The Chargeurs interlining shipped to Hickey Freeman was defectively manufactured, not of merchantable quality, would not pass without objection in the trade, and was not fit for its ordinary purposes, and such defects existed at the time that the Chargeurs interlining left the Defendants' control.

73. Defendants did not implement even baseline quality controls to test or inspect the Chargeurs interlining prior to placing it into the stream of commerce, despite knowing that they "have to allow [themselves] time to test the interlining on the fabric." In doing so, Defendants were, by their own admission, aware that did not "do [their] job properly."

74. Any reasonable person who was aware of Defendants' failures would conclude that the Chargeurs interlining should not have been manufactured as it was.

75. By reason of these defects, the Chargeurs interlining damaged Hickey Freeman's finished garments that Defendants knew and foresaw would be sold to Hickey Freeman's retailer clients and retail customers.

76. As a direct and proximate result of the foregoing, Hickey Freeman has suffered and is entitled to damages in an amount to be determined at trial, but in no event less than $3 million, plus interest thereon at statutory rate of nine percent per annum, together with costs.

77. Moreover, the gross, wanton, and reckless nature of Defendants' conduct, aimed at the public generally, warrants an award of punitive damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION (IN THE ALTERNATIVE)**
**(Against Chargeurs, Lainiére France, Lainiére US and Lainiére Textiles)**
**(Negligence)**

78. Hickey Freeman repeats and re-alleges each and every allegation set forth in paragraphs 1 through 77 as if fully set forth herein.

79. At all relevant times, Defendants maintained a duty of care to manufacture, design, market, sell, and otherwise introduce into the stream of commerce fusible interlining product that was suitable for the ordinary use for which it was intended and would not cause damage to the property of their customers, including Hickey Freeman.

15

80. Defendants breached their duty of care by failing to test or otherwise inspect its defective fusible interlining product before placing it into the stream of commerce.

81. Damages to Hickey Freeman and others were reasonably foreseeable because, as recently admitted by an executive for Chargeurs' CFT division, Defendants "have to allow [themselves] time to test the interlining on the fabric," but nonetheless frequently do not test the interlining on the fabric and thus do not "do [their] job properly."

82. As a direct and proximate result of the foregoing, Hickey Freeman has suffered and is entitled to damages in an amount to be determined at trial, but in no event less than $3 million, plus interest thereon at statutory rate of nine percent per annum, together with costs.

83. Moreover, the gross, wanton, and reckless nature of Defendants' conduct, aimed at the public generally, warrants an award of punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff Hickey Freeman demands judgment against Defendants as follows:

(a) Awarding Hickey Freeman compensatory, incidental, and consequential damages in an amount to be proven at trial, but in no event less than $3,000,000, together with interest and costs;

(b) Awarding Hickey Freeman punitive damages in an amount to be determined at trial;

(c) Granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
June 23, 2017

                        LOEB & LOEB LLP

                    By: */s/ Wook Hwang*
                        Wook Hwang
                        Frank D'Angelo
                        345 Park Avenue
                        New York, New York 10154-1895
                        (212) 407-4000

                    *Attorneys for Plaintiff*
                    *Hickey Freeman Tailored Clothing, Inc.*

13436582