**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
                               :

HICKEY FREEMAN TAILORED       :
CLOTHING, INC.,                    :
                               :

           Plaintiff,          :

                               :  Case No. 17 Civ. 5754 (KPF)
     -against-           :
                               :  Hon. Katherine Polk Failla

CHARGEURS, S.A., LAINIÉRE DE   :
PICARDIE BC SAS, LAINIÉRE DE   :
PICARDIE INC., LAINIÉRE DE PICARDIE :
(WUJIANG) TEXTILES CO. LTD, AND  :
VERATEX LINING LTD,         :
                               :
          Defendants.       :
--------------------------------------------------------X

 

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION**
**TO COMPEL DISCOVERY AND FOR ALTERNATIVE SERVICE**

 

LOEB & LOEB LLP
Wook Hwang
Frank D. D'Angelo
345 Park Avenue
New York, New York 10154
(212) 407-4000

*Counsel for Plaintiff Hickey Freeman*
*Tailored Clothing, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ........................................................................................................ 4

I.    THE CHARGEURS DEFENDANTS SHOULD BE COMPELLED TO
PRODUCE ALL RESPONSIVE DOCUMENTS IN THE POSSESSION OF
LAINIERE TEXTILES ................................................................................... 4

II.   THE CHARGEURS DEFENDANTS SHOULD BE COMPELLED TO
DESIGNATE AND PRODUCE A WITNESS IN RESPONSE TO THE RULE
30(B)(6) NOTICE WITH KNOWLEDGE OF LAINIERE TEXTILES ............. 9

III.  THE CHARGEURS DEFENDANTS SHOULD BE COMPELLED TO
PRODUCE DEPOSITION WITNESSES IN NEW YORK .............................. 12

IV.  HICKEY FREEMAN SHOULD BE GRANTED LEAVE TO EFFECTUATE
ALTERNATIVE SERVICE UPON LAINIERE TEXTILES THROUGH ITS
NEW YORK COUNSEL .............................................................................. 14

CONCLUSION .................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alden v. Time Warner, Inc.*,
  No. 94 Civ. 6109, 1995 U.S. Dist. LEXIS 17038 (S.D.N.Y. Nov. 14, 1995) ......................5, 8

*Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*,
  171 F.R.D. 135 (S.D.N.Y. 1997) ...................................................................................4

*Buzzeo v. Board of Educ.*,
  178 F.R.D. 390 (E.D.N.Y. 1998) .................................................................................12

*Chevron Corp. v. Salazar*,
  275 F.R.D. 437 (S.D.N.Y. 2011) ...................................................................................4

*Dietrich v. Bauer*,
  No. 95 Civ. 7051 (RWS), 2000 U.S. Dist. LEXIS 11729 (S.D.N.Y. Aug. 16,
  2000) ..........................................................................................................4, 5, 8

*Discover Fin. Servs., Inc. v. Visa U.S.A., Inc.*,
  No. 04 Civ. 7844 (BSJ) (DFE), 2006 U.S. Dist. LEXIS 43675 (S.D.N.Y. June
  20, 2006) .............................................................................................................5

*Eid v. KLM*,
  310 F.R.D. 226 (S.D.N.Y. 2015) .................................................................................10

*Florentia Contracting Corp. v. Resolution Trust Corp.*,
  No. 92 Civ. 1188 (PKL), 1993 U.S. Dist. LEXIS 5275 (S.D.N.Y. Apr. 22,
  1993) ..................................................................................................................5

*In re GLG Life Tech Corp. Sec. Litig.*,
  287 F.R.D. 262 (S.D.N.Y. 2012) .........................................................................15, 16, 18

*Harrier Techs. v. CPA Global Ltd.*,
  No. 12 Civ. 167 (WWE), 2014 U.S. Dist. LEXIS 127187 (D. Conn. Sept. 11,
  2014) .................................................................................................................13

*Hunter Douglas, Inc. v. Comfortex Corp.*,
  No. Civ. A. M8-85 (WHP), 1999 U.S. Dist. LEXIS 101 (S.D.N.Y. Jan. 11,
  1999) ..................................................................................................................8

*The Knit With v. Knitting Fever, Inc.*,
  No. 08 Civ. 4221, 2010 U.S. Dist. LEXIS 129870 (E.D. Pa. Dec. 7, 2010) ....................17, 18

*In re LDK Solar Secs. Litig.*,
   No. 07 Civ. 5182 (WHA), 2008 U.S. Dist. LEXIS 90702 (N.D. Cal. June 12,
   2008) ........................................................................................................ 16-17

*M.L.C., Inc. v. N. Am. Philips Corp.*,
   109 F.R.D. 134 (S.D.N.Y. 1986) ....................................................................4

*Motorola Credit Corp. v. Uzan*,
   No. 02 Civ. 666 (JSR), 2013 U.S. Dist. LEXIS 165209 (S.D.N.Y. Nov. 20,
   2013) .........................................................................................................5, 8

*In re Namenda Direct Purchaser Antitrust Litig.*,
   No. 15 Civ. 7488 (CM), 2017 U.S. Dist. LEXIS 139983 (S.D.N.Y. Aug. 30,
   2017) ............................................................................................................4

*In re NTL Sec. Litig.*,
   244 F.R.D. 179 (S.D.N.Y. 2007) ....................................................................6

*S.C. Johnson & Son, Inc. v. Dial Corp.*,
   No. 08 Civ. 4696, 2008 U.S. Dist. LEXIS 76320 (N.D. Ill. Sept. 10. 2008) ..........................11

*Sanofi-Aventis v. Sandoz, Inc.*,
   272 F.R.D. 391 (D.N.J. 2011) .......................................................................11

*SEC v. Anticevic*,
   2009 U.S. Dist. LEXIS 11480 (S.D.N.Y. Feb. 8, 2009) .......................................15

*Sicav v. Wang*,
   989 F. Supp. 2d 264 (S.D.N.Y. 2013) ..................................................15, 16, 18

*In re Ski Train Fire of November 11, 2000 Kaprun Aus.*,
   MDL No. 1428 (SAS) (THK), 2006 U.S. Dist. LEXIS 29987 (S.D.N.Y. May
   16, 2006) ...........................................................................................5, 8, 10, 11

*Sugarhill Records, Ltd. v. Motown Record Corp.*,
   105 F.R.D. 166 (S.D.N.Y. 1985) .........................................................12, 13, 14

*Sulzer Mixpac AG v. Medenstar Indus. Co.*,
   312 F.R.D. 329 (S.D.N.Y. 2015) ...................................................................18

*Tomingas v. Douglas Aircraft Co.*,
   45 F.R.D. 94 (S.D.N.Y. 1968) ......................................................................12

*Twentieth Century Fox Film Corp. v. Marvel Enters.*,
   No. 01 Civ. 3016 (AGS) (HBP), 2002 U.S. Dist. LEXIS 14682 (S.D.N.Y.
   Aug. 8, 2002) ...................................................................................5, 9, 10, 12

*United States v. Stein*,
   488 F. Supp. 2d 350 (S.D.N.Y. 2007) ........................................................................6

*Zhang v. Baidu.Com Inc.*,
   293 F.R.D. 508 (S.D.N.Y. 2013) ....................................................................15, 18

**Rules**

Fed. R. Civ. P. 4(f)(3) ...........................................................................1, 14, 15, 16, 18

Fed. R. Civ. P. 4(h)(2).........................................................................................1, 14

Fed. R. Civ. P. 30(b)(1).......................................................................................1, 12

Fed. R. Civ. P. 30(b)(6).............................................................................................1

Fed. R. Civ. P. 34(a) ................................................................................................4

Fed. R. Civ. P. 37(a) ................................................................................................1

Fed. R. Civ. P. 37(a)(5).............................................................................................1

**Other Authorities**

7 Moore's Federal Practice, § 30.20[1][b][ii]..........................................................12

Plaintiff Hickey Freeman Tailored Clothing, Inc. ("Hickey Freeman") respectfully submits this memorandum of law in support of its motion:

i.     pursuant to Fed. R. Civ. P. 37(a), to compel Defendants Chargeurs, S.A. ("Chargeurs"), Lainiere de Picardie BC SAS, and Lainiere de Picardie Inc. (collectively, the "Chargeurs Defendants") to produce responsive documents in the possession of their subsidiary Lainiere de Picardie (Wujiang) Textiles Co. Ltd ("Lainiere Textiles");

ii.    pursuant to Fed. R. Civ. P. 37(a) and 30(b)(6), to compel the Chargeurs Defendants to produce one or more witnesses for their duly noticed corporate depositions who have knowledge and information in the possession of their subsidiary Lainiere Textiles;

iii.   pursuant to Fed. R. Civ. P. 37(a) and 30(b)(1), to compel the Chargeurs Defendants to produce their witnesses for depositions in New York;

iv.    pursuant to Fed. R. Civ. P. 4(h)(2) and 4(f)(3), for leave to serve the Summons and Complaint upon Lainiere Textiles through its retained counsel, Fox Rothschild LLP; and

v.     pursuant to Fed. R. Civ. P. 37(a)(5), for an award of the attorneys' fees and costs incurred in connection with the instant motion.

## PRELIMINARY STATEMENT

Chargeurs Fashion Technologies is the division of Defendant Chargeurs—operated through its Lainiere de Picardie subsidiaries—that manufactures, markets and sells the defective "interlining" that caused the spoliation of thousands of Hickey Freeman suits and the millions of dollars in damages that serve as the predicate for this action. To date, the Chargeurs Defendants have disclaimed responsibility over this defect by suggesting that a purportedly "separate entity" based in the People's Republic of China ("PRC"), Lainiere Textiles, was solely responsible for the defect. The Chargeurs Defendants, in a brazen about-face reneging on a prior agreement, now take this disclaimer one step further by repudiating *any* discovery obligation with respect to documents and information within Lainiere Textiles' possession, stating to the Court at the

recent February 7 conference that they lack "control" over this entity.  That is demonstrably false.

The Chargeurs Defendants' disavowal of "control" is directly contradicted by the single marketing document the Chargeurs Defendants have produced in this action, which makes clear that Lainiere Textiles is operated as part of the Chargeurs Fashion Technologies umbrella and that it is, indeed, controlled by the Chargeurs Defendants.  That document touts Chargeurs Fashion Technologies' "Worldwide consistency," stating that, with respect to its interlining business: "Everywhere, same products, same guarantees & same process."  (Declaration of Frank D'Angelo ("D'Angelo Decl."), Ex. E, at LDP000131).  This same document specifically singles out Lainiere Textiles as part of the Chargeurs Fashion Technologies segment, again touting that this subsidiary, like all others in the Chargeurs Fashion Technologies segment, is guaranteed to employ the "same production process" and deliver the "same products & services."  (*Id.* at LDP000133).

A review of Chargeurs' websites and regulatory filings (none of which have been produced in this action) underscores even more starkly the extent to which Chargeurs Fashion Technologies is operated as an integrated whole, controlled by the Chargeurs Defendants. Among the representations made by Chargeurs with respect to its interlining business are the following:

- "The Chargeurs parent company acts as a holding company for the Group's companies [which include Chargeurs Fashion Technologies], by:  holding shares in the Group's main subsidiaries; managing central functions: the Group's business strategy, marketing strategy, financial and legal policy, control of operations, human resources policy, and communications; providing specialized assistance (legal, tax and financial expertise) to the subsidiaries, which pay a fee in return for these services; [and] managing treasury and financing and setting up any guarantees." (D'Angelo Decl., Ex. A, at 286) (emphasis added).

- "Chargeurs Fashion Technologies has developed a global network aimed at being at the crossroads of its client supply chains." (*Id.*, Ex. C).

- "In order to bring the same quality service to the garment industry worldwide, <u>Chargeurs Fashion Technologies has developed an extensive global network of subsidiaries,</u> agents and distributors. This network enables our team to be at the heart of our customer supply chains." (*Id.*, Ex. C) (emphasis added).

- "Chargers Fashion Technologies is a global company. Our values and <u>responsibilities span all of our networks, our factories and employees.</u>" (*Id.*, Ex. C) (emphasis added).

- "Since <u>Chargeurs Interlining is fully integrated,</u> we develop innovative solutions with our clients and partners. Our industrial expertise gives our company a leading edge over competition to quickly answer customer needs worldwide." (*Id.*, Ex. C) (emphasis added).

- "Each length of interlining is inspected as it leaves the production line. The cutting and packaging/labeling processes are fully computerized. <u>All interlining produced at Chargeurs Fashion Technologies' plants is inspected meter by meter.</u>" (*Id.*, Ex. A, at 25) (emphasis added).

Bernard Vossart, the Managing Director of Chargeurs' Fashion Technologies segment, is quoted on its website as stating that "[w]e are a major international player present across all continents." (*Id.*, Ex. B). This worldwide presence is specified elsewhere in a Chargeurs' corporate filing as including eight worldwide "manufacturing units" and 18 "marketing subsidiaries," including in China—and this "fully consolidated" Chinese subsidiary is identified as Lainiere Textiles. (*Id.*, Ex. A, at 24, 150). The Chargeurs Defendants' representation to this Court that they lack "control" over its "fully consolidated" and "fully integrated" Chinese subsidiary is, simply, a fiction.

In light of the foregoing self-professed facts, the Chargeurs Defendants are obligated to produce responsive documents in Lainiere Textiles' possession, and to produce one or more witnesses qualified to speak on relevant information within Lainiere Textiles' possession concerning the matters at issue in this action. Moreover, it is now apparent from the Chargeurs Defendants' complete disavowal of responsibility over Lainiere Textiles that this entity should

be brought into this action to avoid further costly and case-delaying gamesmanship.  Hickey Freeman thus respectfully requests that it be granted leave to effectuate alternative service upon Lainiere Textiles through Fox Rothschild (counsel of record for the Chargeurs Defendants), which has represented in written correspondence that it also represents Lainiere Textiles in connection with this action and the matters raised herein.

Finally, because the Chargeurs Defendants maintain substantial business operations in the U.S.—and specifically in New York—and in the interest of judicial economy, the Chargeurs Defendants should likewise be compelled to produce their witnesses for depositions in the forum, consistent with the notices of depositions that Hickey Freeman has served.

## ARGUMENT

### I.   THE CHARGEURS DEFENDANTS SHOULD BE COMPELLED TO PRODUCE ALL RESPONSIVE DOCUMENTS IN THE POSSESSION OF LAINIERE TEXTILES

Under Federal Rule of Civil Procedure 34(a), a party to a litigation is obligated to produce documents within its "possession, custody, or control."  Fed. R. Civ. P. 34(a).  "'Control' has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought upon demand."  *Dietrich v. Bauer*, No. 95 Civ. 7051 (RWS), 2000 U.S. Dist. LEXIS 11729, at *7 (S.D.N.Y. Aug. 16, 2000) (citations omitted); *see also, e.g., In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM) (JCF), 2017 U.S. Dist. LEXIS 139983, at *18-19 (S.D.N.Y. Aug. 30, 2017); *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 447 (S.D.N.Y. 2011); *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146 (S.D.N.Y. 1997); *M.L.C., Inc. v. N. Am. Philips Corp.*, 109 F.R.D. 134, 136-37 (S.D.N.Y. 1986).  Thus, "the test for the production of documents is control, not location, and the respondent may be required to produce materials that are not in its physical possession."  *Chevron*, 275 F.R.D. at 447 (alteration and citations omitted).

"This pragmatic approach to understanding 'control' will often result in a finding that a parent corporation has, practically speaking, sufficient control over its subsidiaries to require that it search them" in responding to requests for documents. *Motorola Credit Corp. v. Uzan*, No. 02 Civ. 666 (JSR), 2013 U.S. Dist. LEXIS 165209, at *10-11 (S.D.N.Y. Nov. 20, 2013).  Indeed, "[n]umerous courts have concluded that a parent corporation has a sufficient degree of ownership and control over a wholly-owned subsidiary that it must be deemed to have control over documents located with that subsidiary." *Dietrich*, 2000 U.S. Dist. LEXIS 11729, at *8-9 (collecting cases); *see also, e.g.*, *Motorola*, 2013 U.S. Dist. LEXIS 165209, at *10-11; *Discover Fin. Servs., Inc. v. Visa U.S.A., Inc*., No. 04 Civ. 7844 (BSJ) (DFE), 2006 U.S. Dist. LEXIS 43675, at *3 (S.D.N.Y. June 20, 2006); *In re Ski Train Fire of November 11, 2000 Kaprun Aus*., MDL No. 1428 (SAS) (THK), 2006 U.S. Dist. LEXIS 29987, at *15-16 (S.D.N.Y. May 16, 2006); *Twentieth Century Fox Film Corp. v. Marvel Enters*., No. 01 Civ. 3016 (AGS) (HBP), 2002 U.S. Dist. LEXIS 14682, at *11-13 (S.D.N.Y. Aug. 8, 2002); *Alden v. Time Warner, Inc*., No. 94 Civ. 6109, 1995 U.S. Dist. LEXIS 17038, at *4 (S.D.N.Y. Nov. 14, 1995).  This is true even where the subsidiary is not a party to the litigation, *see, e.g., Florentia Contracting Corp. v. Resolution Trust Corp.*, No. 92 Civ. 1188 (PKL), 1993 U.S. Dist. LEXIS 5275, at *8 (S.D.N.Y. Apr. 22, 1993) ("it is clear that the nonparty status of [ ] wholly owned subsidiaries does not shield their documents from production") (alteration in original; citation omitted), and where the subsidiary "is not owned directly but, rather, is owned by an intermediate corporation that is itself a wholly-owned corporation of the parent corporation." *Dietrich*, 2000 U.S. Dist. LEXIS 11729, at *9-10 (citing *Lethbridge v. British Aerospace PLC*, No. 89 Civ. 1407, 1990 U.S. Dist. LEXIS 16086 (S.D.N.Y. Nov. 28, 1990)).[1]

---

[1] The concept of "control" is so broad that courts have compelled production when the

Counsel for Hickey Freeman advised counsel for the Chargeurs Defendants as early as November 2017 that pursuant to such legal authority, Lainiere Textiles' documents are "in the control of its parents and affiliates, and thus fall within the production obligations of the other Chargeurs/Lainiere defendants."  (D'Angelo Decl., Ex. J, at 1; *see id.*, Ex, K, at 1.).  Apparently acknowledging this rule, on January 12, 2018, counsel for the Chargeurs Defendants agreed to produce responsive documents within Lainiere Textiles' possession.  (D'Angelo Decl. ¶ 20).  However, at the recent discovery conference, in a brazen eleventh-hour about-face, Chargeurs claimed instead that it was not obligated to produce all responsive documents within Lainiere Textiles' possession, and would produce only a small subset thereof—thus necessitating this motion.  Although the Chargeurs Defendants have produced little information to date, what it has produced and what is publicly available amply demonstrate that it exercises sufficient control over Lainiere Textile to be compelled to produce *all* such documents—not merely some of them.

First, it is undisputed that Lainiere Textiles is a wholly-owned subsidiary of Chargeurs, subsumed within its Chargeurs Fashion Technologies segment.  For example, Chargeurs' 2016 Registration Document, filed with the French financial markets authority (Autorité des marchés financiers, or AMF) and publicly available on its website,[2] represents that Lainiere Textiles is one of several entities that form Chargeurs' "Fashion Technologies Segment" and that are owned by the same Chargeurs holding company.  (*See* D'Angelo Decl. ¶¶ 4-7; *id.*, Ex. A, at 150, 195,

---

relationship at issue is even more tenuous than that of parent and subsidiary.  *See, e.g.*, *United States v. Stein*, 488 F. Supp. 2d 350, 361 & n.46 (S.D.N.Y. 2007) (noting that "subsidiaries [have been compelled to produce] documents in the hands of their parent entities, corporations documents in the hands of employees, clients documents in the hands of attorneys, corporate officers and directors documents in the hands of their corporations, and patients documents in the hands of health care providers," and collecting cases); *In re NTL Sec. Litig.*, 244 F.R.D. 179 (S.D.N.Y. 2007) (sanctioning defendant for failing to produce documents of third-party that was under contractual obligation to provide documents to defendant).

[2] *See* http://www.chargeurs.fr/en/content/registration-document-annual-report, attached as Exhibit A to the accompanying D'Angelo Decl.

245, 270).   As Chargeurs represents on its websites, its Fashion Technologies segment is responsible for interlining design and manufacturing—the very subject of this litigation.  (*See id.*, ¶¶ 9-11; *id.*, Exs. B-D).[3]

Second, as noted previously herein (*see* Preliminary Statement *supra*), the sole marketing document produced by the Chargeurs Defendants in this action, together with statements and materials available on their own websites, make abundantly clear that Lainiere Textiles is under the Chargeurs Defendants' control—part of a "fully integrated" and "fully consolidated" global network of subsidiaries that are guaranteed, among other things, to have "worldwide consistency" from "every factory" so as to produce the "same products" using the "same process."  (*Id.*, Ex. A, at 150; *id.*, Ex. C; *id.*, Ex. E, at LDP000131, LDP000133).   Indeed, Chargeurs and the Lainiere de Picardie group of companies comprising its Chargeurs Fashion Technologies segment specifically state on their website that their "responsibilities span all of our networks, our factories and employees."  (*Id.*, Ex. C) (emphasis added).

Third, Chargeurs and Lainiere Textile have overlapping management.  Bernard Vossart, the Chief Executive Officer of the Chargeurs Fashion Technologies segment of which Lainiere Textiles is a part, is also a member of Chargeurs' Executive Committee and management team.  (*Id.*, Ex. A at 92).

Fourth, if there were any remaining doubt, the Chargeurs Defendants have *already* obtained and produced documents from Lainiere Textiles, as its counsel admitted on the record at the recent discovery conference.  (*Id.*, Ex. Z, at 11:10-13 ("For Lainiere Textiles documents,

---

[3] Among other things, Chargeurs' website states: "Chargeurs Fashion Technologies is our business that serves the world's leading menswear and womenswear brands by designing interlining, the only technical fabric used in a garment.  Interlining is generally hot-fused between the fabric and the lining, to help jackets, coats, shirts and blouses to retain their shape and structure.  The division's chemists and textile engineers develop and apply the coating technology used to manufacture the interlining."  (D'Angelo Decl., Ex. B, at 1).

we do have some e-mails that were produced that have employees from Lainiere Textiles, which is the unserved defendant. We have produced some documents from that entity.")).   And, although Lainiere Textiles remains unserved, the Chargeurs Defendants' counsel of record also serves as counsel to Lainiere Textiles in connection with this action (*see* D'Angelo Decl. ¶ 13 & Exs. F-G), further demonstrating that the Chargeurs Defendants' have not only the legal authority, but the practical ability, to easily collect and produce documents from that entity.

Courts in this District have repeatedly ordered under indistinguishable circumstances. *See, e.g.*, *Motorola Credit Corp. v. Uzan*, 2013 U.S. Dist. LEXIS 165209, at *14-15 (parent must produce documents of subsidiaries where it "wholly owns its subsidiaries," "has established basic principles for coordination of the activities of its subsidiaries," has management overlap, and "has the practical ability to request" documents from them) (citation omitted); *In re Ski Train Fire*, 2006 U.S. Dist. LEXIS 29987, at *18-21 (parent must produce subsidiary's documents where it maintains "complete ownership" of subsidiary, "as a practical matter, [it] can secure documents from [the subsidiary]," and it has "established basic principles for the coordination of the activities of its [ ] subsidiaries"); *Dietrich*, 2000 U.S. Dist. LEXIS 11729, at *13 (parent must produce subsidiary's documents where it "exercises operational control and oversight over the activities of its" subsidiary, has "establishe[d] company-wide policies applicable to" the subsidiary, and has management overlap); *Alden*, 1995 U.S. Dist. LEXIS 17038, at *3-4 (party must produce documents in possession of subsidiaries for which it is the "ultimate parent"); *see also Hunter Douglas, Inc. v. Comfortex Corp.*, No. Civ. A. M8-85 (WHP), 1999 U.S. Dist. LEXIS 101, at *9 (S.D.N.Y. Jan. 11, 1999) ("If the nature of the relationship between the parent and its affiliate is such that the affiliate can obtain documents from its foreign parent to assist itself in litigation, it must produce them for discovery

purposes.").   Accordingly, for the foregoing reasons, Chargeurs should be compelled to produce all responsive documents within Lainiere Textiles' possession.

## II.   THE CHARGEURS DEFENDANTS SHOULD BE COMPELLED TO DESIGNATE AND PRODUCE A WITNESS IN RESPONSE TO THE RULE 30(B)(6) NOTICE WITH KNOWLEDGE OF LAINIERE TEXTILES

For the same reasons discussed above, Chargeurs should be compelled to designate and prepare a witness with knowledge of information within Lainiere Textiles' possession to testify in response to Hickey Freeman's Rule 30(b)(6) notice.

Rule 30(b)(6) requires a corporate party to "designate one or more officers, directors, or managing agents, or . . . other persons who consent to testify on its behalf" to testify "about information known or reasonably available to the organization."   Authority within this District addressing the question of whether a parent company must designate a witness to testify about matters within the knowledge of its subsidiary is scant.   *See Twentieth Century Fox*, 2002 U.S. Dist. LEXIS 14682, at *9-10 ("Neither the parties' research nor my own has found any authority directly addressing the specific question of whether a corporation receiving a Rule 30(b)(6) notice is obligated to prepare its witness with both the entity's own knowledge and the knowledge of its subsidiaries and affiliates.").   However, the only two cases in this District that appear to have addressed this question support the conclusion that Chargeurs should be compelled to produce a witness with knowledge of Lainiere Textiles.

In *Twentieth Century Fox*, the court determined that the rule (set forth above) requiring a corporate parent to produce documents within the possession of its subsidiary "should also be applied to determine the scope of a party's obligation in responding to a Rule 30(b)(6) notice of deposition."   *Id*. at *13.   As the Court explained:

> There is no logical reason why the sources researched by a party in responding to a discovery request should be dependent on the particular discovery vehicle used; in all cases, the responding party should be obligated to produce the information

> under its control.  Application of this principle to Rule 30(b)(6) discovery is not
> only consistent with the judicial interpretations of the other discovery provisions
> of the Federal Rules of Civil Procedure, it is also consistent with the purpose of
> discovery—"[to] make a trial less a game of blind man's buff and more a fair
> contest with the basic issues and facts disclosed to the fullest practicable extent."

*Id*. at *13-14 (quoting *United States v. Procter & Gamble Co*., 356 U.S. 677, 682 (1958)).

Accordingly, because the defendant parent company in that case "own[ed] and operate[d]" the

non-party subsidiary at issue, the Court ordered the defendant to "provide a witness prepared

with" the subsidiary's knowledge.  *Id*. at *14-15.

In recent letter correspondence to the Court, Chargeurs contended that "*Twentieth

Century Fox Film Corp*. was not followed by the court in *In re Ski Train Fire*." (Dkt. No. 33, at

2).  But *In re Ski Train Fire* does not support Chargeurs' position.  To be clear, *In re Ski Train

Fire* did not disturb the ruling in *Twentieth Century Fox*, which remains valid precedent.  *See,

e.g., Eid v. KLM*, 310 F.R.D. 226, 229 (S.D.N.Y. 2015) (citing approvingly to *Twentieth Century

Fox*).  It merely decided not to apply *Twentieth Century Fox* "on the facts of this case" (2006

U.S. Dist. LEXIS 29987, at *28) because, in that case, "there [was] no evidence that [the parent]

was involved" in the matters at issue and the transactions between the parent and subsidiary were

"conduct[ed] on an 'arms length basis.'"  *Id*. at *19, *27-28.  The Court thus held that, under

those specific circumstances, the corporate parent should not be required "to acquire all of the

knowledge of the subsidiary *on matters in which the parent was not involved*."  *Id*. at *28

(emphasis added).

The exact opposite is true here.  As set forth above, the Chargeurs Defendants operate

Lainiere Textiles as part of its "fully integrated" and "fully consolidated" global network of

manufacturing factories, and expressly bear "responsibilities [that] span <u>all</u> of our networks, our

factories and employees."  (D'Angelo Decl., Ex. A, at 150; *id*., Ex. C) (emphasis added).  The

Chargeurs Defendants single out Lainiere Textiles as being guaranteed to employ the "same production process" and deliver the "same products & services" with respect to Chargeurs-branded interlining.   (*Id.*, Ex. E, at LDP000133).   And the Chargeurs Defendants further guarantee that "[a]ll interlining produced at Chargeurs Fashion Technologies' plants is inspected meter by meter."   (*Id.*, Ex. A, at 25) (emphasis added).   There is thus no plausible argument that Chargeurs was "not involved" in the matters on which Hickey Freeman seeks testimony, or that it remains at "arms-length" with Lainiere Textiles, unlike the parent company in *In re Ski Train Fire*.   That case is inapposite.

The weight of authority outside this District supports this conclusion.   As one federal district court recently explained, *In re Ski Train Fire* is an outlier:

> Other courts since *Twentieth Century Fox* have held that knowledge from entities beyond a deponent's direct subsidiary can also be "reasonably available" under Rule 30(b)(6). For instance, they have required a 30(b)(6) designee to obtain information from a subsidiary with "eight degrees of ownership separation" between it and the parent, *S.C. Johnson & Son* [*Inc. v. Dial Corp.*], 2008 U.S. Dist. LEXIS 76320, 2008 WL 4223659, at *2, "affiliates" of the corporate entity named in notice, *Coryn Group* [*II, LLC v. O.C. Seacrets, Inc.*], 265 F.R.D. at 239, and, most importantly, the "parent" and "sister" company of 30(b)(6) deponent, *Murphy* [*v. Kmart Corp.*], 255 F.R.D. at 509. In all of these cases, the litigating corporation had either the legal or practical ability to obtain information from its corporate affiliate. The only case where a court declined to find information from a related entity "reasonably available" involved a subpoena that sought information on matters in which the named deponent was <u>entirely uninvolved</u>. *See In re Ski Train Fire of Nov. 11, 2000 Kaprun, Austria*, 64 Fed. R Serv. 3d 594, 602 (S.D.N.Y. 2006). In other words, the company named in the 30(b)(6) notice did not act with its affiliate in the transaction that gave rise to the lawsuit.

*Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 394-95 (D.N.J. 2011) (emphasis in original); *see also, e.g., S.C. Johnson & Son, Inc. v. Dial Corp.*, No. 08 Civ. 4696, 2008 U.S. Dist. LEXIS 76320, at *6 (N.D. Ill. Sept. 10. 2008) (rejecting reasoning of *In re Ski Train Fire* and holding that the parent company, "with its practical ability to control its [nonparty] subsidiary, is in a far better position than [plaintiff] to identify the proper witness or witnesses and produce them for a

deposition").  As in these cases, and in *Twentieth Century Fox*, Chargeurs should be compelled

to designate and produce one or more witnesses to testify regarding information within Lainiere

Textiles' knowledge.

**III.   THE CHARGEURS DEFENDANTS SHOULD BE COMPELLED TO PRODUCE DEPOSITION WITNESSES IN NEW YORK**

Hickey Freeman has noticed depositions for each of the Chargeurs Defendants and for

three fact witnesses employed by them to occur in New York.  (D'Angelo Decl. Exs. O-T).  As a

general rule, "the party noticing the deposition usually has the right to choose the location."  *See*

7 Moore's Federal Practice, § 30.20[1][b][ii]; *see also* Fed. R. Civ. P. 30(b)(1) (dictating that

notice "must state the time and place of the deposition").  Chargeurs, in letter correspondence to

Hickey Freeman's counsel and to this Court, has instead taken the position that each of these

depositions must proceed in France.  (D'Angelo Decl. Ex. Y; Dkt No. 33, at 2).  While it is true

that depositions of defendants are often conducted where they reside, "defendants are frequently

deposed in places other than the location of the principal place of business, especially in the

forum, for the convenience of all parties and in the general interests of judicial economy."

*Sugarhill Records, Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 171 (S.D.N.Y. 1985); *see*

*Buzzeo v. Board of Educ.*, 178 F.R.D. 390, 392 (E.D.N.Y. 1998); *see also Tomingas v. Douglas*

*Aircraft Co.*, 45 F.R.D. 94, 97 (S.D.N.Y. 1968) ("the location designated for the taking of a

deposition is solely within the discretion of the court").

Here, judicial economy would be best served by having the Chargeurs witnesses travel to

New York, where their depositions have been noticed, as all counsel are located here and would

not need to expend days for travel that could otherwise be used for testimony.  The discovery

deadline has been tolled pending the resolution of this motion (Dkt. No. 34), following which the

parties will have 11 days remaining in the discovery schedule to conduct fact depositions.

Between Hickey Freeman and Chargeurs alone, the parties have noticed 16 depositions.   Those depositions almost certainly could not be completed within the remaining discovery schedule if travel to and from France (as well as to and from Montreal, for depositions of Veratex's witnesses) is required.

Furthermore, it is appropriate here for Chargeurs to bear the expense of its witnesses' travel to New York.  The Court's ruling in *Sugarhill Records, Ltd. v. Motown Record Corp*., 105 F.R.D. 166 (S.D.N.Y. 1985) is instructive.  There, the Court ordered a corporate defendant to appear for a deposition in New York, rather than in California where it had its principal place of business, because it is a "large corporation" and "cannot seriously contend that travel on behalf of the corporation . . . is unexpected or that such travel to New York for deposition imposes a severe burden on it."  *Id.* at 171; *see Harrier Techs. v. CPA Global Ltd*., No. 12 Civ. 167 (WWE), 2014 U.S. Dist. LEXIS 127187, at *9 (D. Conn. Sept. 11, 2014) (ordering deposition to proceed in New York rather than London because "[w]hen a foreign corporation is doing business in the United States, is subject to the Court's jurisdiction, and has freely taken advantage of our federal rules of discovery, exceptions to the general rule on the location of depositions are often made") (citation omitted).

The same is true here.  Chargeurs is a large, multi-national corporation with a substantial U.S. presence.  (D'Angelo Decl. Ex. A, at 58 (stating that the Chargeurs "Group's businesses are conducted primarily in Europe and the United States").  One of the defendants to this action—Lainiere de Picardie Inc. ("Lainiere US")—is located in the United States.  (*Id*., Ex. AA). Chargeurs' "Chargeurs Fashion Technologies" business operates through manufacturing units and marketing subsidiaries in the United States—and several of its other segments conduct substantial business in the United States as well.  (*Id*., Ex. A, at 24, 28, 32, 39; *id*., Ex. D, at 2;

*id.*, Ex. E, at LDP000104).  Chargeurs also has a substantial presence in *New York* specifically.

Its representatives regularly travel to New York to conduct business with Hickey Freeman and

other participants in the fashion and retail sectors.  And, just last year, Chargeurs "opened a

showroom in New York with Chargeurs Fashion Technologies, to showcase our supply chain

and the performance of our business model." (*Id.*, Ex. A, at 31 (emphasis added); *see id.*, Ex. A

at 23, 41 (describing the showroom, located "in the Manhattan district of New York," as a means

of "showcasing Chargeurs Fashion Technologies' expertise" and as part of a new "strategy to

move upmarket").  Further highlighting the lack of burden to Chargeurs, its own counsel even

offered to produce one of its French witnesses in the U.S., before later withdrawing that offer.

(*Id.*, Ex X, at 1; *id.*, Ex. Y).

Accordingly, given Chargeurs' substantial business connections to the U.S.—and in

particular to New York—it "cannot seriously contend that travel on behalf of the corporation . . .

is unexpected or that such travel to New York for deposition imposes a severe burden on it,"

*Sugarhill Records*, 105 F.R.D. at 171, and the Court should exercise its discretion in directing the

Chargeurs Defendants to produce witnesses for depositions in New York, consistent with the

pending notices of deposition.

## IV.   HICKEY FREEMAN SHOULD BE GRANTED LEAVE TO EFFECTUATE ALTERNATIVE SERVICE UPON LAINIERE TEXTILES THROUGH ITS NEW YORK COUNSEL

Service upon foreign entities is governed by Fed. R. Civ. P. 4(h)(2), which in turn permits

service "in any manner prescribed by Rule 4(f)."  Fed. R. Civ. P. 4(f) permits service through,

*inter alia*, the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents

in Civil and Commercial Matters ("Hague Convention") or, alternatively, "by other means not

prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3).  Alternative

service accomplished in the United States does not violate the Hague Convention or any other

international agreement. *See, e.g., Sicav v. Wang*, 989 F. Supp. 2d 264, 278-79 (S.D.N.Y. 2013) (explaining that alternative service on Chinese resident does not violate Hague Convention); *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267-68 (S.D.N.Y. 2012) (same).

"It is well established that there is no hierarchy among the subsections in Rule 4(f)." *Sicav*, 989 F. Supp. 2d at 278 (citation and quotation marks omitted).  Thus, "[a] court is afforded wide discretion in ordering service of process under Rule 4(f)(3)," which "provides the Court with flexibility and discretion … to fit the manner of service utilized to the facts and circumstances of the particular case." *SEC v. Anticevic*, 2009 U.S. Dist. LEXIS 11480, at *7 (S.D.N.Y. Feb. 8, 2009) (citation and quotation marks omitted).  Exercising this discretion, courts in this District have repeatedly made clear that "[a] plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." *Sicav*, 989 F. Supp. 2d at 278 (citation and quotation marks omitted); *see also, e.g., Anticevic*, 2009 U.S. Dist. LEXIS 11480, at *8 (same); *GLG Life Tech*, 287 F.R.D. at 266 ("nothing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order   permitting alternative service under Rule   4(f)(3)").    Rather,  "court-directed  service under Rule 4(f)(3) is as favored as service under Rule 4(f)(1)" through the Hague Convention, and alternative service under Rule 4(f)(3) is "neither a last resort nor extraordinary relief." *GLG Life Tech*, 287 F.R.D. at 265 (citations and quotation marks omitted).

The difficulty of effectuating service through the Hague Convention on PRC residents in particular is well documented.  In *Zhang v. Baidu.Com Inc*., 293 F.R.D. 508 (S.D.N.Y. 2013), for example, the PRC refused to effectuate service on the Chinese entity Baidu.com.  And, in all instances, attempts to serve PRC entities through the Hague Convention, whether successful or

not, is costly, time-consuming and requires anywhere from four to 18 months, after which service may not be made at all. *Sicav*, 989 F. Supp. 2d at 280 ("To serve a defendant in China, a plaintiff must provide the defendant's address and the translated complaint to the Chinese Ministry of Justice. Service by the Ministry of Justice may or may not be successful; when successful, it has been said to take anywhere from four to six months, six to eight months, or six to 18 months . . .") (internal citations omitted); *see also, e.g., GLG Life Tech*, 287 F.R.D. at 266.

Accordingly, courts have permitted service to PRC residents where no attempts to serve through the Hague Convention have been made. In *Sicay*, a court in this District authorized alternative service on a PRC resident where the plaintiff's only attempt at service was a previous request to a co-defendant to accept service on the PRC resident's behalf. 989 F. Supp. 2d at 278. The court noted the notorious difficulties of Hague Convention service in the PRC and reasoned that requiring such an attempt "would either needlessly delay the resolution of this case for many months, when in other respects it is ready to go forward, or result in the case against [the co-defendant] moving forward decoupled from the case against [the PRC resident]—an inefficient result." *Id.* at 280. In *GLG Life Tech*, another court in this District similarly authorized alternative service where the only prior attempt at service on a PRC resident was a request that service be waived. 287 F.R.D. at 264. As in *Sicav*, the court in *GLG Life Tech* explained that attempts at Hague Convention service in the PRC "may unnecessarily delay this case," and explained that "[c]ourts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)." *Id.* at 266; *see also, e.g., In re LDK Solar Secs. Litig*., No. 07 Civ. 5182 (WHA), 2008 U.S. Dist. LEXIS 90702, at *4 (N.D. Cal. June 12, 2008) (authorizing alternative service on Chinese subsidiary of co-defendant

without first attempting "time-consuming, costly, and potentially fruitless" service through the Hague Convention); *The Knit With v. Knitting Fever, Inc*., No. 08 Civ. 4221, 2010 U.S. Dist. LEXIS 129870 (E.D. Pa. Dec. 7, 2010) (granting leave to serve defendant via counsel where plaintiff sought a waiver of service from the defendant before seeking leave to serve the defendant by alternative means).

The circumstances are indistinguishable here.[4]   A request to accept service was made on June 26, 2017 (D'Angelo Decl., Ex. G, at 2 (June 26, 2017 email from W. Hwang to W. Stassen)) and, more formally, service waiver request forms were sent on August 7, 2017 (*see id.*, Ex. H (August 6 , 2017 email from W. Hwang to C. Morgan)).   No response was received within the 60-day waiver period, which expired on October 6, 2017.   And despite repeated requests, including in Hickey Freeman's first interrogatory, that the Chargeurs Defendants provide Lainiere Textiles' address for service in the PRC (*see e.g.*, *id*., Ex. I, at 4 (Interrogatory Responses); *id*., Ex. J (Nov. 21, 2017 email from W. Hwang to C. Morgan et al.)), it was not until January 12, 2018, that the Chargeurs Defendants' counsel finally confirmed that entity's address.   (*Id.*, Ex. N (January 12, 2018 email from F. D'Angelo to C. Morgan)).   There is no question that attempted service on Lainiere Textiles through the Hague Convention—whether at that time, or after the deadline to respond to waive service expired on October 6, or likely even at the commencement of this action—would have delayed the resolution of this action, even if the attempt were successful.   And such an attempt would certainly delay this action now.

---

[4] On May 10, 2017, before this action was commenced, Fox Rothschild, the Chargeurs Defendants' counsel, wrote to this firm and advised that "Lainiere de Picardie (Wujiang) Textiles Co., Ltd retained us" concerning the interlining defect at issue in this action.   (D'Angelo Decl., Ex. F).   On July 25, 2017, Fox Rothschild wrote that "Fox Rothschild will be counsel of record for the named defendants in this action … except for the Veratex entity," thus confirming its representation of Lainiere Textiles in connection with this action.   (*Id.*, Ex. G (July 25, 2017 email from W. Stassen to W. Hwang)).

There is no prejudice to Lainiere Textiles or any of the other Chargeurs Defendants, were leave to effect alternative service to be granted.  Lainiere Textiles is represented by the same counsel as the other Chargeurs Defendants and its interests, aligned completely with the Chargeurs Defendants, have been and will continue to be advanced by the same counsel.  No answer has been filed by any of the Chargeurs Defendants and discovery is not yet complete, such that Lainiere Textiles will have a full and fair opportunity to participate in this action. Should this motion be denied, on the other hand, it would "result in the case against [the Chargeurs Defendants] moving forward decoupled from the case against [Lainiere Textiles]—an inefficient result." *Sicav*, 989 F. Supp. 2d at 280.

Accordingly, Hickey Freeman requests leave to serve Lainiere Textiles by email to its counsel, Fox Rothschild.  Courts have frequently permitted such means of service pursuant to Fed. R. Civ. P. 4(f)(3) where, as here, there is no reason to doubt that the defendant will receive notice of the summons and complaint from its counsel. *See, e.g., Zhang v. Baidu.Com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013) ("pursuant to Rule 4(f)(3), Plaintiffs are authorized to serve the Summons and Complaint on Baidu's New York counsel"); *GLG Life Tech*, 287 F.R.D. at 268 (permitting service on PRC resident's counsel and employer where such service "is certain to apprise Zhang of the pendency of this action"); *Sicav*, 989 F. Supp. 2d at 280 ("The Court sees no reason to slow the progress of this case by ordering service through the Convention when service through SmartHeat and its counsel will be just as reliable, if not more so."); *Knit With*, 2010 U.S. Dist. LEXIS 129870, at *14 ("the Court finds that service of Defendants Designer Yarns and Filatura through their U.S. counsel, Joshua Slavitt, will comport with due process"); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331 (S.D.N.Y. 2015) (permitting email service where it "is reasonably calculated, under all circumstances, to apprise interested

18

parties of the pendency of the action and afford them an opportunity to present their objections")

(citation and quotation marks omitted).

Hickey Freeman will, of course, comply with any other means of alternative service directed by the Court, including, for example, service upon any of the other Chargeurs Defendants, all of which either own or are otherwise affiliated with Lainiere Textiles as part of the same "fully integrated" Chargeurs Fashion Technologies segment.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, Hickey Freeman's motion to compel discovery as set forth herein, for attorneys' fees and costs incurred in connection with this motion, and for leave to effectuate alternative service should be granted.

Dated: New York, New York
      February 16, 2018

                    LOEB & LOEB LLP

                    By:   */s/ Frank D'Angelo*
                        Wook Hwang
                        Frank D'Angelo
                        345 Park Avenue
                        New York, New York 10154-1895
                        (212) 407-4000

                        *Attorneys for Plaintiff Hickey Freeman Tailored*
                        *Clothing, Inc.*

15743593.2