UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                              :

HICKEY FREEMAN TAILORED              :
CLOTHING, INC.,                                 :

                Plaintiff,                :     Case No. 17 Civ. 5754 (KPF)
                                              :
                                              :     Hon. Katherine Polk Failla
       -against-                     :
                                              :     **DECLARATION OF FRANK**
CHARGEURS, S.A., LAINIÉRE DE             :     **D'ANGELO IN SUPPORT OF HICKEY**
PICARDIE BC SAS, LAINIÉRE DE            :     **FREEMAN'S MOTION TO COMPEL**
PICARDIE INC., LAINIÉRE DE PICARDIE    :     **DISCOVERY AND FOR**
(WUJIANG) TEXTILES CO. LTD, AND       :     **ALTERNATIVE SERVICE**
VERATEX LINING LTD,                         :
                                              :
                Defendants.           :
----------------------------------------------------------X

       I, **FRANK D'ANGELO**, declare as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

       1.       I am associated with Loeb & Loeb LLP, attorneys for Plaintiff Hickey Freeman Tailored Clothing, Inc. ("Hickey Freeman") in the above-captioned action. I am fully familiar with the facts set forth herein, and respectfully submit this declaration in support of Hickey Freeman's motion to compel discovery from Defendants Chargeurs, S.A. ("Chargeurs"), Lainiere de Picardie BC SAS ("Lainiere France"), and Lainiere de Picardie Inc. ("Lainiere US") (collectively, the "Chargeurs Defendants"), and for alternative service.

       2.       I hereby certify pursuant to Federal Rule of Civil Procedure 37(a)(1), Local Civil Rule 37.2, and Rule 3(C) of this Court's Individual Rules of Practice in Civil Cases that Hickey Freeman has conferred in good faith with counsel for the Chargeurs Defendants in an attempt to resolve the issues addressed by this motion, as reflected in the exhibits attached hereto and as

outlined in Hickey Freeman's pre-motion letter to the Court dated February 5, 2018. (Dkt. No. 30). This motion is made pursuant to the Court's Order dated February 8, 2018. (Dkt. No. 34).

3.      Hickey Freeman initially filed its Complaint in the Supreme Court of the State of New York, on or about June 23, 2017, before the Chargeurs Defendants removed the action to this Court on or about July 28, 2017. (Dkt. No. 1 & 1-1). In its Complaint, Hickey Freeman named Lainiere de Picardie (Wujiang) Textiles Co. Ltd ("Lainiere Textiles") as one of several defendants responsible for the damages alleged therein. The Complaint alleges, for example, that Lainiere Textiles, a Chinese corporation, is a part of Chargeurs' "Fashion Technologies" operating division that manufactured and sold the fusible interlining at issue to Hickey Freeman:

> Chargeurs Fashion Technologies ("CFT"), a division of Defendant Chargeurs, bills itself as one of the world's leading manufacturers and distributors of fusible interlining, operating through Chargeurs' direct and indirect subsidiaries, Defendants Lainiére France, Lainiére US and Lainiére Textiles, to manufacture and sell interlining under the CFT brand. CFT and its constituent entities sell CFT-manufactured interlining directly to customers or, in the case of Hickey Freeman, through its distributor and agent Veratex (Compl. ¶ 3).

As set forth below, several Chargeurs documents discuss its Chargeurs Fashion Technologies ("CFT") business in similar terms.

4.      Attached as **Exhibit A** is a true and correct copy of Chargeurs' 2016 Registration Statement (also available at http://www.chargeurs.fr/sites/default/files/upload/chargeurs_2016_registration_document_2018.01.10.pdf). That statement, purportedly filed with the French financial markets authority (Autorité des marchés financiers, or AMF) (Ex. A, at ii), represents CFT to be one of Chargeurs' "four businesses" and its only business involved in the "[k]ey niche market" of "[g]arment interlining." *Id*. at 16; *see id.* at 113 ("Chargeurs and its subsidiaries (the Chargeurs Group) are organized around four business lines," including "Chargeurs Fashion Technologies[, which] manufactures and markets garment interlinings.").

Chargeurs states that "Chargeurs Fashion Technologies is our business that serves the world's leading menswear and womenswear brands by designing interlining, the only technical fabric used in a garment." *Id*. at 22.  According to Chargeurs, CFT's financials are consolidated with those of Chargeurs' three other primary businesses (Chargeurs Protective Films, Chargeurs Technical Substrates, and Luxury Materials) and together they constitute the financial results for Chargeurs, S.A.  *Id*. at 39-48.

5. The Registration Statement repeatedly equates CFT with Lainiere Textiles (and the other subsidiaries consolidated within Chargeurs' CFT business).  For example, according to Chargeurs, the component parts of its CFT business are located around the globe—consisting of 8 manufacturing units across 4 continents, including in China and the U.S., and 18 marketing subsidiaries, also in China and the U.S.  *Id*. at 24.  One of those manufacturing units is Lainiere Textiles.  According to the Registration Statement, Lainiere Textiles is one of several entities that form its CFT segment, that are owned by the same Chargeurs holding company, and whose financials are "fully consolidated" with those of Chargeurs—and have been since at least 2014.  *Id*. at 150, 195, 245, 270.

6. The Registration Statement also represents that Chargeurs, through its CFT business, exercises control over the business, manufacturing, inspection/quality control, and marketing activities of CFT's component entities, including Lainiere Textiles.  It states, for example, that "The Chargeurs parent company acts as a holding company for the Group's companies, by:  holding shares in the Group's main subsidiaries; managing central functions: the Group's business strategy, marketing strategy, financial and legal policy, control of operations, human resources policy, and communications; providing specialized assistance (legal, tax and

financial expertise) to the subsidiaries, which pay a fee in return for these services; [and] managing treasury and financing and setting up any guarantees." *Id.* at 286.

7. It further states that CFT ensures that "Quality controls are performed on each production batch at various stages in the process, covering the products' stability, bond strength, suppleness and feel," and that "Each length of interlining is inspected as it leaves the production line. The cutting and packaging/labeling processes are fully computerized. All interlining produced at Chargeurs Fashion Technologies' plants is inspected meter by meter" *Id.* at 25.

8. The Registration Statement also describes CFT's connection to New York specifically. It notes that in 2017, Chargeurs "opened a showroom in New York with Chargeurs Fashion Technologies, to showcase our supply chain and the performance of our business model." *Id.* at 31. It describes the showroom, located "in the Manhattan district of New York," as a means of "showcasing Chargeurs Fashion Technologies' expertise" and as part of a new "strategy to move upmarket." *Id.* at 23, 41.

9. Attached as **Exhibit B** is a true and correct copy of the Chargeurs website located at the URL http://www.chargeurs.fr/en/content/chargeurs-fashiontechnologies, and captured as of February 15, 2018. Chargeurs' website also discusses its CFT business and touts that business's global presence. It states, "Interlining is a high value-added product built around our intimate knowledge of the leading international brands, ability to allocate production across a global manufacturing base, supplu [*sic*] chain capabilities and innovative service solutions." It further states, "Chargeur [*sic*] Fashion Technologies' interlining gives shape and structure to the garments sold by over 1,600 luxury, ready-to-wear and fast-fashion brands. Its global footprint, with eight plants and 18 marketing subsidiaries, enables it to offer a local service to every

customer in a highly mobile apparel industry." The website quotes CFT's Managing Director, Bernard Vossart, as saying "We are a major international player present across all continents."

10. Attached as **Exhibit C** is a true and correct copy of Chargeurs' CFT website located at the URL http://www.chargeurs-fashion-technologies.com/business, and captured as of February 15, 2018. The CFT website similarly touts the global nature of the Chargeurs-owned-and-operated CFT business. It states, among other things: "Chargers Fashion Technologies is a global company. Our values and responsibilities span all of our networks, our factories and employees"; "Chargeurs Fashion Technologies has developed a global network aimed at being at the crossroads of its client supply chains"; and "In order to bring the same quality service to the garment industry worldwide, Chargeurs Fashion Technologies has developed an extensive global network of subsidiaries, agents and distributors. This network enables our team to be at the heart of our customer supply chains." The website further represents CFT to be a fully integrated business with control over its constituent manufacturing and distribution entities. For example, it states, "Since Chargeurs Interlining is fully integrated, we develop innovative solutions with our clients and partners. Our industrial expertise gives our company a leading edge over competition to quickly answer customer needs worldwide," and further notes, "From manufacturing to distribution, Chargeurs Fashion Technologies teams serving brands, designers and garment manufacturers" (emphasis added).

11. Attached as **Exhibit D** is a true and correct copy of Chargeurs' "Factsheet" for its CFT business, accessed via the link on Chargeurs website located at http://www.chargeurs.fr/en/content/chargeurs-fashion-technologies (and is itself available online at http://www.chargeurs.fr/sites/default/files/upload/chargeurs_fashion_technologies_en.pdf). Echoing Chargeurs' Registration Statement, that Factsheet states that CFT operates 8

manufacturing units across 4 continents, including in China and the U.S., as well as 18 marketing subsidiaries, also in China and the U.S.

12.     Attached as **Exhibit E** is a true and correct copy of a document produced by Chargeurs in this action, Bates-stamped LDP000101 – LDP000145.  That document, which appears to be a "Chargeurs Interlining" presentation deck, touts CFT's "Worldwide consistency," stating that, with respect to its interlining business: "Everywhere, same products, same guarantees & same process." (Ex. E, at LDP000131).  That document singles out Lainiere Textiles, which it states "is inspired directly from our headquarter[s]," and again touts that Lainiere Textiles, like other CFT constituent entities, is guaranteed to employ the "[s]ame production process" and deliver the "[s]ame products & services." (*Id.* at LDP000133).

13.     Shortly before the filing of the Complaint, on May 5, 2017, Chargeurs' counsel, William Stassen from Fox Rothschild LLP, wrote to my colleague Wook Hwang confirming that Lainiere Textiles had retained his firm to represent it in connection with the defective interlining dispute between the parties.  A true and correct copy of that letter is attached hereto as **Exhibit F**.  Following the filing of the Complaint, on June 26, 2017, Mr. Hwang reached out to Mr. Stassen to ask if he was authorized to accept service on behalf of any of the defendants, including Lainiere Textiles.  On July 25, 2017, Mr. Stassen replied, "I have finally received confirmation that Fox Rothschild will be counsel of record for the named defendants in the action asserted by Hickey Freeman, except for the Veratex entity."  A true and correct copy of this email exchange is attached hereto as **Exhibit G**.

14.     On August 6, 2017, my colleague Mr. Hwang provided Mr. Stassen with service waiver forms for Chargers, Lainiere France, and Lainiere Textiles, however none of those

entities ever executed the waivers.  A true and correct copy of the August 6, 2017 email from Mr. Hwang to Mr. Stassen is attached hereto as **Exhibit H**.

15. Discovery commenced shortly thereafter, and on September 29, 2017, Hickey Freeman served interrogatories on Chargers, Lainiere France, and Lainiere US asking them to identify, among other things, "the entity that manufactured the Subject Interlining and the address of each facility at which the Subject Interlining was manufactured." On October 27, 2017, in response to that interrogatory, Chargeurs identified Lainiere Textiles, but declined to provide an address for that entity. A true and correct copy of the interrogatory responses is attached hereto as **Exhibit I**. (*See* Ex. I, at Response to Interrogatory No. 1).

16. By November 2017, Chargeurs had not yet provided an address for Lainiere Textiles. That month, the parties exchanged emails regarding a joint request for an extension of the discovery deadline. Within the context of that discussion, on November 21, 2017, my colleague Mr. Hwang wrote to Chargeurs' counsel, Caroline Morgan of Fox Rothschild LLP, raising the issue of Chargeurs' failure to provide an address for Lainiere Textiles, and also indicating that irrespective of service upon that entity, Chargeurs would need to produce documents within the possession of Lainiere Textiles. He stated as follows: "I'm also not sure how you expect us to have served the Chinese entity when you have yet to provide its address for service of process, despite its being requested in our first interrogatory. Please be prepared on tomorrow's meet-and-confer to provide the address. Please also be prepared to advise whether you will be producing documents in the possession of the Chinese company, which, under 2d Circuit and SDNY case law, is in the control of its parents and affiliates, and thus fall within the production obligations of the other Chargeurs/Lainiere defendants." A true and correct copy of

that email is attached hereto as **Exhibit J**.  An address for Lainiere Textiles was not provided in response to that email.

17. Concurrent with this discussion, I engaged in meet and confers with Ms. Morgan regarding Chargeurs' responses to Hickey Freeman's document requests and interrogatories.  We first met and conferred regarding these issues on November 20, at which time I advised Ms. Morgan of Hickey Freeman's position that all responsive Lainiere Textiles' documents should be produced by Chargeurs because they are "within the possession, custody, or control of Chargeurs, as its corporate parent," and asked whether Chargeurs would produce such documents.  I further asked that Ms. Morgan provide the address for Lainiere Textiles, as requested in Hickey Freeman's interrogatory.  Ms. Morgan indicated she would need to follow up on those requests at a later time.  On November 21, 2017, I emailed Ms. Morgan memorializing our discussion.  She replied, "We will review and respond in substance shortly." A true and correct copy of that email exchange is attached hereto as **Exhibit K**.  Ms. Morgan, however, never responded.

18. I followed up with Ms. Morgan again by letter dated December 21, 2017 raising these same issues.  A true and correct copy of that letter is attached hereto as **Exhibit L**.

19. On January 10, 2018, having still received no response from Ms. Morgan, I requested a follow-up telephonic meet-and-confer on these issues (and others).  A true and correct copy of my January 10 email is attached hereto as **Exhibit M**.

20. On January 12, 2018, Ms. Morgan and I spoke by phone.  During that call, I again asked whether Chargeurs would be producing responsive documents within Lainiere Textiles' possession.  Ms. Morgan responded that Chargeurs would produce responsive documents belonging to Lainiere Textiles that are within Chargeurs' control.  I then inquired as to whether

Chargeurs would be withholding any Lainiere Textiles documents on the basis that they are not within Chargeurs' control. Ms. Morgan replied that she was not aware of any Lainiere Textiles documents outside of Chargeurs' control. During that call, we also discussed the address for Lainiere Textiles, which Ms. Morgan stated was the same Lainiere Textiles address that defendant Veratex Lining Ltd. had included in its own interrogatory responses. Shortly after that call, I memorialized my conversation with Ms. Morgan in an email later that same day, a true and correct copy of which is attached hereto as **Exhibit N**. Ms. Morgan never responded nor indicated a different understanding of our conversation.

21. At around this same time, on December 1, 2017, Hickey Freeman served notices of deposition on the Chargeurs Defendants (as well as on Veratex). Hickey Freeman amended those notices following that date, and the current versions of its notices for Chargeurs witnesses—*i.e.*, corporate deposition notices for Chargeurs, Lainiere France, and Lainiere US, and fact witness deposition notices for Fran Natale, Francois Rousseau, and Dong Gui—dated and served February 7, 2018, are attached hereto as **Exhibit O** through **Exhibit T**. Each of those depositions have been noticed for Hickey Freeman's counsel's offices in New York.

22. Following the filing of the first versions of these notices, Ms. Morgan and I engaged in telephone, letter, and email correspondence from January 2 through January 25, 2018, regarding the depositions of Chargeurs witnesses. True and correct copies of relevant letter and email correspondence are attached hereto as **Exhibit U** through **Exhibit X**. As that correspondence reflects, Ms. Morgan and I discussed, but were unable to resolve, whether Chargeurs would need to designate a witness with knowledge of Lainiere Textiles to testify in response to the Rule 30(b)(6) notice served on Chargeurs, and whether the depositions would proceed in New York (as noticed) or instead in France. (The parties were, however, able to

come to an agreement on various other issues relating to the topics listed in the Rule 30(b)(6) notices, which Hickey Freeman later incorporated into its amended notices served February 7.)

23. During the course of that correspondence, on a January 12 phone call, Ms. Morgan offered to produce Chargeurs' employee Mr. Rousseau for a deposition in the U.S. (Ex. X, at 1). However, by email dated February 5, 2018, Ms. Morgan withdrew that offer, insisting that each of the depositions for Chargeurs' witnesses would need to proceed in France. A true and correct copy of Ms. Morgan's February 5 email is attached hereto as **Exhibit Y**.

24. As the Court knows, the parties appeared for a discovery conference on February 7, 2018. A true and correct copy of the transcript from that conference is attached hereto as **Exhibit Z**.

25. Finally, attached hereto as **Exhibit AA** is a true and correct copy of the search result for Lainiere US on the website for the Commonwealth of Pennsylvania's Department of State. The search result indicates that Lainiere US is a registered corporation with the Commonwealth of Pennsylvania and is located in Langhorne, Pennsylvania.

Dated: New York, New York
       February 16, 2018

                                               */s/ Frank D. D'Angelo*
                                               Frank D. D'Angelo

15739028