


**Frank D. D'Angelo**
Attorney At Law

345 Park Avenue
New York, NY 10154

**Direct** 212.407.4189
**Main** 212.407.4000
**Fax** 212.504.3264
fdangelo@loeb.com

Via ECF and E-mail
(Failla_NYSDChambers@nysd.uscourts.gov)

July 3, 2018

Hon. Katherine Polk Failla
U.S. District Court, Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007

Re: *Hickey Freeman Tailored Clothing, Inc. v. Chargeurs, S.A. et al.*, No. 1:17-cv-05754-KPF

Dear Judge Failla:

On behalf of Plaintiff Hickey Freeman Tailored Clothing, Inc. ("Hickey Freeman"), we write in response to: (i) the June 28, 2018 letter by Defendants Chargeurs, S.A. ("Chargeurs"), Lainiere de Picardie, Inc., and Lainiere de Picardie BC SAS requesting a pre-motion conference on a cross-motion to compel [Dkt. No. 68], and (ii) the June 29, 2018 letter by Defendant Veratex Lining Ltd. ("Veratex") requesting an extension of the fact discovery deadline [Dkt. No. 69].

By their cross-motion, Chargeurs takes the same approach it did in advance of the February 7, 2018 pre-motion conference regarding Hickey Freeman's first motion to compel – to manufacture out of whole cloth a counterweight to its own discovery failures and, this time, its willful non-compliance with the Court's April 19 Order. This is evident once again from Chargeurs' failure even to request a meet-and-confer with us to discuss the purported issues raised in its filing – the same tactic that led the Court previously to admonish Chargeurs' counsel not to initiate discussions for the first time with the Court "that you should have had with your adversary counsel." (*See* Feb. 7 Tr. [Dkt. No. 42] at 68:10-12). The issues Chargeurs' counsel raises were concocted just days ago, and are meritless, as Hickey Freeman has expended an inordinate amount of resources to ensure its compliance with its discovery obligations while receiving virtually nothing of substance from Chargeurs and its subsidiaries.

**Chargeurs' Claimed Dispute Over Hickey Freeman's Deposition**

In response to Chargeurs' original Rule 30(b)(6) notice, dated February 3, 2018, Hickey Freeman has already provided *four days* of Rule 30(b)(6) testimony, spread among two separate witnesses, to ensure that the most educated individuals with respect to the originally noticed topics were prepared to offer knowledgeable testimony. This was in addition to multiple individual deponents Hickey Freeman has proffered.

Pursuant to the parties' agreement, Hickey Freeman's Rule 30(b)(6) deposition was scheduled to run consecutively from June 21-22 to June 25-26 (with an intervening weekend). At 10:51 p.m. on June 18, effectively *two days* before Hickey Freeman's deposition was to begin, Chargeurs served an amended deposition notice, containing 10 new topics and 9 newly expanded topics. The transparent purpose of that amended notice was to manufacture a preparation obligation that Hickey Freeman could not possibly meet – among other reasons, because Chargeurs' own witness was to be deposed the following day – so as to create a false dispute to distract from Chargeurs'



For the United States offices, a limited liability partnership including professional corporations. For Hong Kong office, a limited liability partnership.






own multitude of discovery failures. Making this clear, the untimely June 18 amended notice was issued two days after Chargeurs had advised that it never collected and would not produce *any* documents from the companies that oversee the Chargeurs Fashion Technologies (CFT) division of Chargeurs (Fitexin and Chargeurs Entoilage), and that, for the same reason, its corporate designee would not be educated on any relevant facts relating to the CFT business; and on the same day that witness thus failed to provide any testimony regarding key matters as to which the Court had ordered Chargeurs to be prepared to testify—including "topics such as marketing, sales, quality control, and manufacturing practices." (Apr. 19 Tr. [Dkt. No. 53] at 12:21-25).

There is no question that the amended notice was untimely under the circumstances. Chargeurs' "cross-motion" with respect to this issue fails for this reason alone. But in any event, despite the eleventh-hour service of that notice, Hickey Freeman's witnesses provided detailed testimony regarding at least 6 of the 10 entirely new topics [Dkt. No. 68, Ex. 2, Topics 26-27, 30-33]. As to others, the witnesses either directed Chargeurs to documents in the parties' production containing the information sought or explained why such information was impossible to ascertain within the time period Chargeurs provided [*id*. Ex. 2, Topics 24-25, 28-29]. While Chargeurs misleadingly states in its letter that the witnesses did not recall having seen the June 19 amended notice, the witnesses were never asked if they *discussed* the topics in that notice with Hickey Freeman's counsel. They did, as their testimony makes clear.

As to the topics in the original February 3 notice, Hickey Freeman's corporate designees Jeffrey Diduch and Alan Abramowicz testified knowledgeably and extensively, including about the topics referenced in Chargeurs' letter. Reflecting the extensive efforts Hickey Freeman undertook to educate them, Mr. Diduch testified that he prepared for his deposition by meeting and speaking with counsel for approximately 7 hours, reviewing documents with them, and speaking with at least seven (7) Hickey Freeman employees to educate himself as to the noticed topics. Mr. Abramowicz testified that he met with counsel for at least 14 hours, reviewed documents with them, and conferred with at least four (4) other Hickey Freeman employees. As to the substance of their testimony, contrary to Chargeurs' letter, Mr. Diduch testified at length about the 78-point inspection and quality control process employed during the production run at issue and the machine settings and operation of the various pressing machines at Hickey Freeman's factory; and Mr. Abramowicz testified at length regarding the multiyear relationship with Defendants during which Hickey Freeman met with and purchased interlining from them, the various ways in which Hickey Freeman's reputation has been harmed by Defendants' acts, and the steps Hickey Freeman has undertaken to address customer complaints about the defective suits caused by Chargeurs' defective interlining. Should the Court wish to review them, Hickey Freeman will submit portions of the relevant transcripts, which make abundantly clear, when specific testimony is not cherry-picked out of context, that both witnesses were prepared regarding the noticed topics.

**<u>Chargeurs' Demand for an Order Compelling Production of Physical Evidence Was Premature, and Has Been Resolved</u>**

It was only on the evening of Friday, June 15, that Chargeurs' counsel sent us a protocol for destructive testing of certain physical evidence in Hickey Freeman's possession, identifying the categories of physical samples Chargeurs was seeking. That protocol has now been agreed upon, and the physical evidence was produced earlier today. Accordingly, this issue is resolved.

Chargeurs' premature request for judicial intervention was made without even requesting a meet-and-confer with us. Indeed, we provided Chargeurs' counsel with updates on June 19, 20 and 26 in which we advised that we were working on the matter and sought clarification as to the





categories of items Chargeurs was seeking. Had Chargeurs' counsel discussed this issue with us, they would have known that Hickey Freeman was diligently searching for the requested materials and were preparing to produce them.

**Chargeurs' Continual Disavowal of "Control"**

Chargeurs continues its shell game with mutually contradictory, and in some cases obviously false, assertions to this Court. Among other things, Chargeurs claims that "[t]here is no entity that controls the CFT entity," despite a global operation by which this supposedly non-operational *division of Chargeurs* "sells 300 million meters of interlining every year" through "20 subsidiaries and 5 commercial companies, serving more than 90 countries." (*See* http://www.chargeurs-fashion-technologies.com/). In other words, Chargeurs *still* refuses to take a position on who possesses the relevant documents and information concerning the CFT business that have been – and continue to be – withheld from Hickey Freeman through the close of fact discovery.

What is clear is that: (1) Chargeurs has flouted the April 19 Order by refusing to collect and produce documents from the very entities (Fitexin and Chargeurs Entoilage) through which this Court held that it controls Lainiere Textiles; (2) Chargeurs obviously has the legal right and practical ability to obtain documents and information from Chargeurs Entoilage and Fitexin, as evidenced, among other things, by their ability to produce documents in the possession of a *subsidiary* of these entities (Lainiere Textiles); (3) the culpability of Chargeurs Entoilage and Fitexin with respect to the matters at issue in this action was made clear only through recent depositions, precisely because Chargeurs has flouted its production obligations and this Court's April 19 Order; (4) Chargeurs has still failed, after the close of fact discovery, to complete its production of responsive documents in the possession of Lainiere Textiles that it was ordered to produce, despite having promised its completion by May 16; and (5) Chargeurs has further flouted the April 19 Order by brazenly declining to prepare its witness to testify on matters as to which this Court had ordered it to testify – including Lainiere Textiles' "marketing, sales, quality control, and manufacturing practices," and even the contents of documents Chargeurs' counsel has itself produced concerning the interlining at issue. Chargeurs instead chooses now to launch an impermissible collateral attack on the April 19 Order, long after its time to move for reconsideration passed. We will be prepared to address each of these issues in more detail at any conference scheduled by the Court. But, in short, Chargeurs' counsel's continuing refrain that it has "worked diligently" to comply with their discovery obligations is the very opposite of what has occurred.

**Remaining Depositions of Percipient Witnesses**

Veratex notes in its letter that there are four depositions that one or more of the parties seek to take, of: (1) Martha Diamond, noticed by Hickey Freeman on June 4, for a June 29 deposition; (2) Chris Linares, noticed by Chargeurs on June 5, for a June 11 deposition; and (3) two depositions of non-parties Dillard's Inc. and its employee Michael McNiff, noticed and subpoenaed by Veratex on June 25, for June 28 and 29 depositions. Only the depositions of Martha Diamond and Chris Linares were timely noticed. We have no objection to producing Mr. Linares for deposition, but submit that Hickey Freeman cannot continue to participate in a one-sided discovery process, expending extensive amounts in legal fees to prepare and produce witnesses while Chargeurs continues to flout its discovery obligations and this Court's April 19 Order. We will await the Court's further guidance before proceeding with any further depositions.

We thank the Court for its time and look forward to discussing these issues further with the Court.






Respectfully submitted,

*/s/ Frank D. D'Angelo*

Frank D. D'Angelo
Attorney At Law

cc: All counsel (via ECF)