**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------

HICKEY FREEMAN TAILORED CLOTHING, INC., :
                                               : Case No.: 17-cv-5754 (KPF)
                                               :
                       Plaintiff, :
                                               :
          -against- :
                                               :
CHARGEURS, S.A., LAINIERE DE PICARDIE BC SAS, :
LAINIERE DE PICARDIE INC., LAINIERE DE :
PICARDIE (WUJIANG) TEXTILES CO. LTD, AND :
VERATEX LINING LTD., :
                      Defendants. :
                                               :

-----------------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
## CHARGEURS, S.A. AND LAINIERE DE PICARDIE INC.'S
## <u>OPPOSITION TO PLAINTIFF'S MOTION TO AMEND AND TO COMPEL</u>

**FOX ROTHSCHILD LLP**

Caroline A. Morgan, Esq.
101 Park Avenue, Suite 1700
New York, New York 10178
(646) 601-7613
(212) 692-0940 (fax)
<u>cmorgan@foxrothschild.com</u>
*Attorneys for defendants Chargeurs*
*S.A. and Lainiere de Picardie Inc.*

# <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 6

I.      Hickey Freeman Should Be Denied Leave to Amend its Complaint to add Fitexin and Chargeurs Entoilage as Defendants. .......................................................... 6

A. Leave to Amend is Not Warranted under Federal Rules of Civil Procedure 15(a), 16(b) or 21 ............................................................................................................. 6

1. Hickey Freeman fails to show good cause as required by Federal Rule of Civil Procedure 16. ....................................................................................................... 6

i. Hickey Freeman fails to show good cause and acts in bad faith because its claim that it learned new facts in June 2018 is belied by its argument to the Court that at least as early as April 2018 it believed that Chargeurs S.A. controls Wujiang through Fitexin and Chargeurs Entoilage. ........................................................... 7

ii. Hickey Freeman fails to show good cause and acts in bad faith because its claim that it learned new facts in June 2018 is rendered false by the fact that it received documentation in April 2018 identifying Mr. Rousseau as a Fitexin employee and stating that there was a common legal interest between Fitexin, Defendants and Veratex. ............................................................................................................... 8

iii. ......... Hickey Freeman fails to show good cause and acts in bad faith because its claim that it learned new facts in June 2018 is contradicted by the fact that it represented to the Court in August 2017 that it knew that Chargeurs Entoilage and its indirect subsidiaries were part of CFT. ............................................................ 9

iv. ......... Hickey Freeman fails to show good cause and acts in bad faith because its claim that it learned new facts in June 2018 is improper given it failed to perform due diligence and is on constructive notice of public documents since prior to the complaint being filed. ............................................................................................. 9

v. .................. Hickey Freeman fails to show good cause because its excuses for not discovering facts until June 2018 are unavailing. ................................................. 12

2. Hickey Freeman fails to comport with Federal Rules of Civil Procedure 15 and 21. . 16

i. ........ Hickey Freeman fails to comport with Rule 15 and 21 because in giving the Court three different versions of when and how it learned the allegedly new facts it basis its Motion on it acts in bad faith and with undue delay. ........................... 17

ii. .... Hickey Freeman fails to comport with Rule 15 and 21 because it misconstrues the testimony it relies on to support its Motion. .................................................. 18

iii. ............... Hickey Freeman fails to comport with Rule 15 and 21 because adding Chargeurs Entoilage and Fitexin would unduly prejudice defendants. ............... 23

II.     Chargeurs SA Should Not Be Compelled to Produce All Responsive Documents in the Possession of Fitexin or Chargeurs Entoilage. ......................................... 26

i. .... Hickey Freeman fails the four factor test under *Sicav* and thereby fails to show that Chargeurs S.A. controls Chargeurs Entoilage or Fitexin. .............................. 27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: Application of Passport Special Opportunities Master Fund*,
2016 WL 844833 (S.D.N.Y. Mar. 1, 2016) ...........................................................................27

*In re Bank of New York Corp. Forex Transactions Litig.*,
2014 WL 4494158 (S.D.N.Y. Sept. 4, 2014) ...........................................................................9

*Chepilko v. City of New York*,
2010 WL 3926186 (E.D.N.Y. Sept. 8, 2010) .........................................................................25

*Cintron v. Weissman*,
2015 WL 5604954 (N.D.N.Y. Sept. 23, 2015) .......................................................................26

*Dasrath v. Stony Brook Univ. Med. Ctr.*,
2014 WL 1760907 (E.D.N.Y. Apr. 29, 2014) ............................................................8, 18, 24

*Dawson v. Pelican Mgmt, Inc.*,
2012 WL 2357308 (E.D.N.Y. June 1, 2012) .........................................................................27

*De Malmanche v. Glenrock Asset Mgmt. Assocs., L.P.*,
2011 WL 990165 (S.D.N.Y. Mar. 16, 2011) ...................................................................12, 17

*Elliott v. City of Hartford*,
2012 WL 3288826 (D. Conn. Aug. 10, 2012) .......................................................................12

*Golden Trade, S.r.L. v. Lee Apparel Co.*,
143 F.R.D. 514 (S.D.N.Y. 1992) ..........................................................................................27

*iMedicor, Inc. v. Access Pharmaceuticals, Inc.*,
290 F.R.D. 50 (S.D.N.Y. 2013) ............................................................................................24

*Kontarines v. Mortg. Elec. Registration Sys., Inc.*,
2016 WL 3821310 (E.D.N.Y. July 12, 2016) .......................................................................26

*Louis v. Metro. Transit Auth.*,
2014 WL 5311455 (E.D.N.Y. Oct. 16, 2014) .......................................................................11

*Morritt v. Stryker Corp.*,
973 F. Supp. 2d 177 (E.D.N.Y. 2013) ..................................................................................11

*In re Namenda Direct Purchaser Antitrust Litig.*,
2017 WL 3822883 (S.D.N.Y. Aug. 30, 2017) .................................................................10, 29

i

*Olaf Soot Design, LLC v. Daktronics, Inc.*,
   299 F. Supp. 3d 395 (S.D.N.Y. 2017) .....................................................................26

*Rambarran v. Mount Sinai Hosp.*,
   2008 WL 850478 (S.D.N.Y. Mar. 28, 2008) ................................................8, 17, 24

*Rent–A–Center, Inc., v. 47 Mamaroneck Avenue Corp.*,
   215 F.R.D. 100 (S.D.N.Y. 2003) .............................................................................11

*Ruffolo v. Oppenheimer & Co.*,
   987 F.2d 129 (2d Cir. 1993).....................................................................................17

*Schnepf v. Jerome H. Siegel, M.D., P.C.*,
   1998 WL 474132 (S.D.N.Y. July 11, 1998) ............................................................26

*Sicav v. Wang*,
   2014 WL 2624753 (S.D.N.Y. June 12, 2014) ..............................................27, 28, 29

*Soroof Trading Development Co., Ltd. v. GE Microgen, Inc.*,
   283 F.R.D. 142 (S.D.N.Y. 2012) .................................................................6, 17, 24

*Tardif v. City of New York*,
   2015 WL 9257069 (S.D.N.Y. Dec. 7, 2015) .............................................................7

*In re Vivendi Universal, S.A. Sec. Litig.*,
   2009 WL 8588405 (S.D.N.Y. July 10, 2009) ..........................................................29

*Zucker v. Porteck Glob. Servs., Inc.*,
   2015 WL 6442414 (E.D.N.Y. Oct. 23, 2015)...........................................................25

**Other Authorities**

Federal Rules of Civil Procedure 15(a) ................................................................ *passim*

ACTIVE\64565750.v3-9/14/18

Defendants Chargeurs, S.A. and Lainiere de Picardie Inc. ("Lainiere US") (collectively "Defendants"), by and through their undersigned counsel, respectfully submit this memorandum of law in opposition to plaintiff Hickey Freeman Tailored Clothing, Inc.'s ("Hickey Freeman" or "Plaintiff") motion to amend to add Chargeurs Entoilage S.A.S ("Chargeurs Entoilage") and Fitexin S.A.S. ("Fitexin") as parties and to compel discovery ("the Motion").

<u>**PRELIMINARY STATEMENT**</u>

Hickey Freeman testified that it first believed that interlining it purchased from Veratex Lining Ltd. ("Veratex") could be defective on February 20, 2017.  *See* Robert Jeffrey Diduch's June 21, 2018 Deposition Transcript at page 129:15-18, attached as Exhibit 1 to the Declaration of Caroline Morgan ("Morgan Dec.").  Ultimately, in June 2017 Hickey Freeman filed a lawsuit and later told this Court that it did not know whom the proper defendants were.  *See* Transcript of August 31, 2017 Hearing at page 36:9-11, attached as Exhibit 2 to the Morgan Dec ("Aug. 31, 2017 Hearing Tr.").  Approximately a year and a half later, following the exchange of over twenty-two thousand (22,000) pages of documents including organizational charts, eighteen (18) days of depositions with witnesses flying in from overseas, four (4) conferences before this Court, the passing of the Court's December 29, 2017 deadline to amend a pleading or to add parties, three extensions of the fact discovery deadline, and Hickey Freeman withdrawing one of the defendants after admitting that it has nothing to do with this case, Hickey Freeman now seeks to add two more parties.  This Court should deny the Motion because the record, including Hickey Freeman's own words, reveals its request to add Chargeurs Entoilage and Fitexin based on alleged information it learned in June 2018 depositions is a sham.

Prior to filing this Motion, Hickey Freeman repeatedly argued to the Court that its April 19, 2018 Order, entered before a single deposition had taken place, "unequivocally" holds that

1

Chargeurs S.A. controls Lainiere de Picardie (Wujiang) Textiles Ltd. ("Wujiang") (the manufacturer of the allegedly defective interlining no less) through Fitexin and Chargeurs Entoilage.  *See* Hickey Freeman's June 25 and July 3, 2018 Letter Motions, at pages 2 and 3, respectively, attached as Exhibit 3 and 4, to Morgan Dec., respectively ("June 25, 2018 Letter Motion") and ("July 3, 2018 Letter Motion").  Hickey Freeman's own words refute its claimed disbelief until June 2018.  This Court should deny the Motion alone on the fact that it is premised on a misrepresentation.

In addition to the above contradictory statements and other inconsistent representations to the Court, discussed in detail below, this Court should deny the Motion because testimony from depositions demonstrates that neither Chargeurs Entoilage nor Fitexin managed the marketing or development of interlining within Chargeurs Fashion Technologies ("CFT") and does not support that either had anything whatsoever to do with the sale of allegedly defective interlining to Hickey Freeman.  Notably, Hickey Freeman concedes that it knew of the existence of Chargeurs Entoilage and Fitexin and their respective status as intermediate subsidiaries between Chargeurs S.A. and Lainiere de Picardie (Wujiang) Textiles Co. Ltd. ("Wujiang"), but claims it was unaware of their alleged control of CFT.  *See* Plaintiff's Memorandum of Law to the Motion ("Plaintiff's MOL") at page 8.  CFT is not a legal entity[1] but a trademark[2].  Testimony shows that the subsidiaries in the division of CFT are part of a decentralized structure with each subsidiary managing its own

---

[1] *See* Vanessa Defait's (corporate designee of Chargeurs S.A.) June 18, 2018 Deposition Transcript at page 85:3-13, attached as Exhibit 5 to the Morgan Dec ("Defait Dep. Tr.").

[2] *See* Francois Rousseau's June 12, 2018 Deposition Transcript at page 32:17-24, attached as Exhibit 6 to the Morgan Dec. ("Rousseau Dep. Tr."); *see also* results from United States Patent and Trademark Office, Trademark Electronic Search System, attached as Exhibit 7 to the Morgan Dec., available at http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4810:d5o6ij.2.1.

day-to-day activities, including manufacturing and quality control.  As the corporate designee of Chargeurs S.A. testified:

> "The function of Chargeurs S.A. and indeed the function of the group at Chargeurs, S.A. is a very decentralized one, and so each subsidiary has its own domain of competence, its own managers, its own organization to set out its own strategy for marketing.  Chargeurs S.A. is a pure holding company and does not interfere at all in these other matters."

*See* Vanessa Defait's June 19, 2018 Deposition Transcript at 219:21-220:6, attached as Exhibit 8 to Morgan Dec. ("Defait Dep. Tr.").  Similarly, Mr. Francois Rousseau, an employee of Fitexin, testified that Fitexin does not manage the day-to-day operations of any of its subsidiaries.  *See* Exhibit 6 to Morgan Dec. at pages 42:16-43:4 (Rousseau Dep. Tr.).  Tellingly, Hickey Freeman's Motion is silent on what specific acts either Fitexin or Chargeurs Entoilage did with respect to the sale of allegedly defective interlining to it.  Indeed, because there is no such testimony, in its Proposed Amended Complaint all Hickey Freeman does is literally cross out Lainiere de Picardie BC SAS, a party it dismissed after acknowledging it "is not a proper defendant [] given their (sic) apparent lack of involvement in the matters at issue"[3], and replace it with Chargeurs Entoilage and Fitexin in the only portion of the amended complaint dedicated to acts directed to Hickey Freeman. *See* Proposed Amended Complaint, section entitled "Defendants' Marketing and Sale of Defective Chargeurs Interlining to Hickey Freeman" at pages 8-12, attached as Exhibit 10 to the Morgan Dec.  The lack of a single pleaded fact attributed to either Chargeurs Entoilage or Fitexin is not for want of further depositions, as Hickey Freeman has already deposed a Fitexin employee and argued thereafter to the Court that if it grants its Motion additional depositions would not be necessary.[4]

---

[3] *See* June 12, 2018 email from Frank D'Angelo to Caroline Morgan, attached as Exhibit 9 to the Morgan Dec.
[4] *See* Transcript of July 17, 2018 Hearing at page 106:20-22, attached as Exhibit 11 to the Morgan Dec. ("[P]lease remember that you led me to believe that there would be no additional depositions warranted.")

3

Similar to its illusory testimony, Hickey Freeman claims Defendants have "critical evidence" about Chargeurs Entoilage and Fitexin but never states what that evidence is. *See* Plaintiff's MOL at page 2. Looking to shift the blame for missing the deadline to add parties, Hickey Freeman even faults Defendants for not producing documents within the possession of Chargeurs Entoilage or Fitexin, despite the Court previously ruling that defendants have never had any obligation to do so. *See* Exhibit 11 to the Morgan Dec. at page 29:22-24 (July 17, 2018 Hearing Tr.) ("[It is true] . . . that Chargeurs S.A.'s document production obligations do not extend to Chargeurs Entoilage and Fitexin.").

Even assuming the record supported Hickey Freeman's alleged newfound belief in June 2018, the Court should still deny the Motion because many of the facts Hickey Freeman alleges it learned, including the corporate structure and presidents of Chargeurs Entoilage and Fitexin, are in numerous public documents that Hickey Freeman could have downloaded before it filed its complaint, let alone before the expiration of the deadline to add parties. Hickey Freeman is silent on any actions it took before the deadline to exercise due diligence in naming the proper parties despite having the burden to do so.[5] Instead, Hickey Freeman cites to pages of Defendants' website around the date of its Motion that include information posted after the deadline. In any event, due

---

[5] Hickey Freeman's Motion is also silent on portions of the Proposed Amended Complaint that alters previously alleged facts intimately familiar to only Hickey Freeman including whether it experienced any problems with defendants' interlining previously (*see* ¶ 37 of Proposed Amended Complaint, attached as Exhibit 10 to Morgan Dec.) and the number of suits that it sold before it became aware of the alleged defect (*see id.* at ¶ 41). Even assuming Hickey Freeman is attempting to comport the Proposed Amended Complaint with its current understanding of the facts, it cherry picks its amendments as Hickey Freeman conceded it misquoted Mr. Rousseau's speech but fails to correct the complaint. *See* Francois Rousseau's June 13, 2018 Deposition Transcript at page 205:9-14, attached as Exhibit 13 to Morgan Dec. ("Rousseau Dep. Tr."); *see also* Stipulated Transcription of Speech, attached as Exhibit 14 to the Morgan Dec.

diligence requires more than perusing Defendants' website.  Courts routinely deny motions to amend when public documents reveal information that a movant relies on.

In addition, absent this Court denying the Motion, Defendants will suffer significant prejudice.  Fact discovery, which has already been extended three times, will be closed before Plaintiff's Motion is fully briefed.  Defendants have a right to a timely disposition of the case. Hickey Freeman has known since August 2017 that a Joint Pretrial Order would be submitted within thirty days of the close of all discovery and that "unless the Court orders otherwise for good cause shown, the parties shall be ready for trial 30 days after the Joint Pretrial Order is filed." *See* Exhibit 15 to Morgan Dec. at pages 5-6 (Aug. 31, 2017 Scheduling Order).  Hickey Freeman's argument that the case will be delayed anyway if Wujiang is served rewards it with a litigation advantage despite it waiting until May 14, 2018-almost one year after filing its complaint-to even begin the process of service.  *See* Plaintiff's Request for Issuance of Summons, attached as Exhibit 12 to Morgan Dec.

Finally, because the record shows that Chargeurs S.A. does not control Chargeurs Entoilage or Fitexin, this Court should not compel Chargeurs S.A. to produce documents from them.  Hickey Freeman fails to provide any evidence demonstrating that Chargeurs S.A. controls or manages their day-to-day business operations and its request to compel is nothing short of a fishing expedition.

5

## ARGUMENT

I.     **Hickey Freeman Should Be Denied Leave to Amend its Complaint to add Fitexin and Chargeurs Entoilage as Defendants.**

     **A.  Leave to Amend is Not Warranted under Federal Rules of Civil Procedure 15(a), 16(b) or 21.**

     **1.  Hickey Freeman fails to show good cause as required by Federal Rule of Civil Procedure 16.**

Pursuant to F.R.C.P. Rule 16, where a scheduling order has already been entered restricting the right to amend, "such an order may be modified only for good cause[.]"  *Soroof Trading Development Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (internal quotation marks omitted).  The Rule 16 standard is higher than the standard set forth in Rule 15.  *Id.* "Good cause is demonstrated by a showing that despite [the movant] having exercised diligence, the applicable deadline could not have been reasonably met . . . Thus, if the proposed amendment relies on information that the party knew or should have known prior to the deadline, leave to amend is properly denied." *Id.* (internal quotation marks omitted).  A court can also consider "any prejudice to the nonmoving party [and] the length of delay in filing the amendment." *Tardif v. City of New York*, 2015 WL 9257069 at *3 (S.D.N.Y. Dec. 7, 2015) (internal quotation marks omitted).

Rule 16 exists to "create certainty in pretrial proceedings and ensure that at some point both the parties and the pleadings will be fixed." *Id.* (internal quotation marks omitted).  "Indeed, if [adding parties before trial] were to be considered without regard to [scheduling orders], it would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Id.*

Here, the deadline to amend a pleading or add a party was almost a year ago, on December 29, 2017.  *See* August 31, 2017 Scheduling Order at ¶ 4, attached as Exhibit 15 to the Morgan Dec.

6

Hickey Freeman claims that it "did not discover-and could not have reasonably discovered-the *extent* of Fitexin and Chargeurs Entoilage's involvement in the events at issue here until depositions conducted in this action in late June 2018."  Plaintiff's MOL at page 5 (emphasis added).  Notably, Hickey Freeman does not deny having knowledge of Fitexin and Charguers Entoilage's alleged involvement prior to June 2018, just the extent of their involvement.  This Court should deny the Motion because the record reflects Chargeurs Entoilage and Fitexin do not control CFT or any of its subsidiaries and, in any event, that Hickey Freeman knew or should have known prior to the deadline that Chargeurs Entoilage was a direct subsidiary of Chargeurs S.A., that Fitexin was a direct subsidiary of Chargeurs Entoilage, that Wujiang was a direct subsidiary of Fitexin, that Mr. Bernard Vossart was the President of both Fitexin and Chargeurs Entoilage including the managing director of CFT, and that all three entities are part of the division of CFT, a trademark that describes a division of subsidiaries.

> i.      Hickey Freeman fails to show good cause and acts in bad faith because its claim that it learned new facts in June 2018 is belied by its argument to the Court that at least as early as April 2018 it believed that Chargeurs S.A. controls Wujiang through Fitexin and Chargeurs Entoilage.

Prior to filing this Motion and even in this Motion, Hickey Freeman argues that the Court's April 19, 2018 Order, entered before a single deposition had taken place, "unequivocally" holds that Chargeurs S.A. controls Wujiang through Fitexin and Chargeurs Entoilage.  *See* Exhibits 3 and 4 to Morgan Dec. at pages 2 and 3, respectively (June 25, 2018 and July 3, 2018 Letter Motions).  In the Motion, Hickey Freeman contradicts itself when it goes on to claim that it was not until depositions in June 2018 that it learned that Fitexin and Chargeurs Entoilage were allegedly involved in CFT's interlining business.  *See* Plaintiff's MOL at page 5.  Hickey Freeman's belief concerning the April 19, 2018 Order renders false its assertion that the depositions are the starting point of its belief that Chargeurs Entoilage and Fitexin had any role.

Accordingly, this Court should deny the Motion for Hickey Freeman's failure to specify the timing of its alleged discovery. *See Rambarran v. Mount Sinai Hosp.*, 2008 WL 850478, at *3 (S.D.N.Y. Mar. 28, 2008) (good cause denied where movant provided no specific information regarding the timing of its alleged newly discovered information); *Dasrath v. Stony Brook Univ. Med. Ctr.*, 2014 WL 1760907, at *3-4 (E.D.N.Y. Apr. 29, 2014) (denying leave to amend where movant relied on "self-serving misrepresentations" and factual contradictions in support of his motion).

> ii.     Hickey Freeman fails to show good cause and acts in bad faith because its claim that it learned new facts in June 2018 is rendered false by the fact that it received documentation in April 2018 identifying Mr. Rousseau as a Fitexin employee and stating that there was a common legal interest between Fitexin, Defendants and Veratex.

On April 26, 2018, before a single deposition had taken place, Hickey Freeman received Defendants' motion for a protective order stating that Mr. Francois Rousseau was a representative of Fitexin and that a common legal interest existed between Fitexin, Defendants and Veratex. *See* Defendants' Memorandum of Law in Support of Motion for Protective Order at pages 5 and 6, attached as Exhibit 16 to the Morgan Dec.  Hickey Freeman apparently believed that Mr. Rousseau was relevant to the case from the very beginning, given it quoted his presentation in its complaint, *see* Exhibit 17 to Morgan Dec. at ¶ 22 ("Plaintiff's Complaint"), and proffered the presentation to the Court as potentially describing the cause of the alleged defect.[6]  Hickey Freeman's receipt of the fact of Mr. Rousseau's affiliation with Fitexin in conjunction with Hickey Freeman's allegation concerning his role in this action renders its alleged discovery at June 2018 depositions false. Accordingly, this Court should deny the Motion.  *See In re Bank of New York Corp. Forex Transactions Litig.*, 2014 WL 4494158, at *4 (S.D.N.Y. Sept. 4, 2014) (denying plaintiffs' motions

---

[6] *See* Exhibit 2 to Morgan Dec. at page 8:12-19 (Aug. 31, 2017 Hearing Tr.).

for leave to amend where the amendments were intended to address shortcomings in the complaints that plaintiffs were already aware of).

iii.     Hickey Freeman fails to show good cause and acts in bad faith because its claim that it learned new facts in June 2018 is contradicted by the fact that it represented to the Court in August 2017 that it knew that Chargeurs Entoilage and its indirect subsidiaries were part of CFT.

On August 8, 2017, before a single deposition had taken place, Hickey Freeman stated to this Court that Chargeurs S.A. "owns and controls the Chargeurs Fashion Technologies brand, under which Chargeurs and its *direct* and indirect subsidiaries [] manufacture, market and distribute fusible interlining…" (Emphasis added). *See* Plaintiff's August 8, 2017 Letter to Court, attached as Exhibit 39 to Morgan Dec. Chargeurs S.A.'s only direct subsidiary within CFT is Chargeurs Entoilage. *See* Organizational Chart, attached as Exhibit 18 to Morgan Dec., *filed under seal*. Moreover, Chargeurs Entoilage's direct subsidiary status is a fact, in addition to Fitexin's status as an indirect subsidiary, which is stated in public documents existing prior to Hickey Freeman even filing the lawsuit, let alone the deadline to add a party. *See, e.g.,* 2016 Registration Document and 2016 Annual Report at pages 150 and 124 respectively, attached as Exhibits 19 and 20 to the Morgan Dec. Hickey Freeman's statement to the Court renders false its instant claim that almost a year later, in June 2018, it first believed that Chargeurs Entoilage and Fitexin manufacture or market fusible interlining.

iv.     Hickey Freeman fails to show good cause and acts in bad faith because its claim that it learned new facts in June 2018 is improper given it failed to perform due diligence and is on constructive notice of public documents since prior to the complaint being filed.

Prior to Hickey Freeman filing its lawsuit on June 23, 2017, before a single deposition had taken place, Hickey Freeman could have performed due diligence and downloaded for a measley

9

€8.12 public registry documents filed with the Clerk of Commercial Courts in France[7] stating that Mr. Bernard Vossart, whom Hickey Freeman believed was important enough to send not one but two pre-litigation demand letters to[8], was the President of both Chargeurs Entoilage and Fitexin. *See* Infogreffe Public Record Materials, attached as Exhibit 23 to Morgan Dec. Public registry documents filed with the Clerk also show that Ms. Angela Chan currently serves as President of Chargeurs Entoilage and Fitexin. *Id.* Hickey Freeman did not even have to visit a French website; it could have obtained the same information from either D&B or Hoovers. *See* D&B Credit Reports and Hoovers Reports, attached as Exhibits 24 and 25 to Morgan Dec., respectively.

Hickey Freeman claims it was "unable to ascertain any [of the above facts] from information in the public record[.]" Plaintiff's MOL at page 11. Tellingly, Hickey Freeman does not state to the Court what it did to search the public record other than perusing Defendants' website, and even there it does not state whether it did so prior to the deadline. This omission is compounded by the fact that in August 2017, Hickey Freeman told the Court it was not sure who the proper defendants were. *See* Exhibit 2 to Morgan Dec. at page 36:9-11 (Aug. 31, 2017 Hearing Tr.). Thus, not only did Hickey Freeman fail to act with due diligence, it knew as early as August 2017 that it needed to perform due diligence in addition to due diligence performed before a

---

[7] Infogreffe (via www.infogreffe.fr) "provides distribution of legal and economic information on business companies on behalf of all of the Registries of all French commercial courts. As an extension of the public services provided by court registrars, Infogreffe's mission is to facilitate access to its services and to dematerialise all the principal procedures and dealings with registrars. *The information provided has legal validity.*" *See* https://www.infogreffe.com/greffe-tribunal/registre-entreprise-societe.html (emphasis added.). Infogreffe makes "available to the public data collected by each of the 134 clerks of the Commercial Courts…The registry contains all the information concerning traders and companies: whether by moral or physical persons, **exercising a commercial type activity legally requires registration with the Trade and Companies Register (RCS).** The Register is maintained locally by the Commercial Court Registries. The RCS Registry **information is public**…Various documents relating to companies, including annual reports and official proceedings (Kbis documents, statutes, inscriptions of privileges etc) are offered to the public; pricing is **set by law.** *The service is provided in French and in English.*" *Id.* (Emphasis in italics is added.)

[8] *See* demand letters sent to Bernard Vossart by Stephen Granovsky of Hickey Freeman and Hickey Freeman's counsel, attached as Exhibits 21 and 22 to Morgan Dec., respectively.

plaintiff files a complaint.  *See Morritt v. Stryker Corp.*, 973 F. Supp. 2d 177, 183 (E.D.N.Y. 2013) (denying leave to amend where "plaintiffs have not even attempted to demonstrate diligence."); *Rent–A–Center, Inc., v. 47 Mamaroneck Avenue Corp.,* 215 F.R.D. 100, 105 (S.D.N.Y. 2003) (finding a lack of diligence because, *inter alia,* movant's failure to comply with scheduling order resulted from a lack of diligence); *Louis v. Metro. Transit Auth.*, 2014 WL 5311455, at *1 (E.D.N.Y. Oct. 16, 2014) (upholding the magistrate judge's denial of plaintiff's request to add new claims to the complaint where the magistrate found "[d]ue diligence is even more plainly lacking . . . because plaintiff offers no reason at all—let alone a sufficient one—for her failure to assert the proposed new claims before the deadline set pursuant to Rule 16.").  Hickey Freeman, who had the resources of an international law firm with a Western Europe corporate department consisting of "internationally trained and multilingual" attorneys with "best friend" law firms established in Europe to help them[9], should have with due diligence discovered these facts and is on constructive notice of them since before it filed its complaint.  Moreover, Mr. Abramowicz, the President of Hickey Freeman who is internally heading the litigation, is also an attorney.  *See* June 25, 2018 Deposition Transcript of Alan Abramowicz at 13:13-19, attached as Exhibit 27 to the Morgan Dec. ("Abramowicz Dep. Tr."), *filed under seal*; *see also* June 7, 2018 Deposition Transcript of Stephen Granovsky at 277:16-19, attached as Exhibit 40 to Morgan Dec., *filed under seal*.  Under similar facts courts have found good cause does not exist.  *See, e.g.*, *De Malmanche v. Glenrock Asset Mgmt. Assocs., L.P.*, 2011 WL 990165, at *6 (S.D.N.Y. Mar. 16, 2011) (finding no good cause for amendment where information "was available to them at all

---

[9] *See* Screenshot of Loeb and Loeb's Website, attached as Exhibit 26 to Morgan Dec., *available at* https://www.loeb.com/corporate-westerneuropecorporate.

relevant times, as it is contained in the online public record of the FSA Register, had they only acted with reasonable diligence in seeking it."); *Elliott v. City of Hartford*, 2012 WL 3288826, at *4 (D. Conn. Aug. 10, 2012) (denying plaintiffs' motion to amend the complaint to add certain defendants where plaintiffs' counsel failed to properly investigate readily available public information).  Accordingly, given the availability of public information prior to the deadline, this Court should deny the Motion.

> v.     Hickey Freeman fails to show good cause because its excuses for not discovering facts until June 2018 are unavailing.

Hickey Freeman's barrage of excuses for not discovering the above facts until June 2018 is unavailing.  First, its reference to testimony from its corporate designee to support that prior to this action and throughout the course of the parties' business relationship it never heard of Fitexin or Chargeurs Entoilage or knew of their alleged involvement in CFT or that it believed it was purchasing interlining manufactured, marketed, and sold by "Chargeurs" without any specificity as to the exact party is misplaced.  Mr. Abramowicz's lack of knowledge is unsurprising given this Court has determined that he was not adequately prepared to testify on the very subject of the business relationship between the parties and Ordered his further deposition.  *See* July 17, 2018 Order, attached as Exhibit 28 to Morgan Dec.  In addition, what Hickey Freeman knew or did not know prior to filing its complaint is not determinative of good cause for purposes of Rule 16.  Rather, good cause is shown by what Hickey Freeman knew or should have known prior to the deadline to add a party in the Scheduling Order (here, December 29, 2017).

Second, Hickey Freeman's excuse that it could not have known of Fitexin or Chargeurs Entoilage's alleged involvement in CFT because Defendants did not identify Mr. Rousseau and Mr. Vossart in their Rule 26 and September 29, 2017 Interrogatories rings hollow.  Hickey Freeman had the following extensive contact with both Mr. Rousseau and Mr. Vossart before it

12

filed its complaint:  (1) Hickey Freeman's President and CEO repeatedly emailed Mr. Vossart[10]; (2) Hickey Freeman's President met Mr. Rousseau in person[11]; (3) Hickey Freeman's counsel sent pre-litigation demand letters to Mr. Rousseau and Mr. Vossart[12]; and (4) Hickey Freeman's President attended and recorded a presentation given by Mr. Rousseau which it later quoted in its complaint.[13]

In addition, Defendants named Mr. Rousseau as an individual who participated in meetings with Hickey Freeman. *See* Defendants' October 30, 2017 Responses to Plaintiff's Interrogatories, attached as Exhibit 32 to Morgan Dec., *filed under seal*.  Concerning Hickey Freeman's allegation that Defendants failed to identify Mr. Rousseau as a witness with information regarding the investigation of the allegedly defective interlining, Mr. Rousseau testified that he was not involved in any investigation and had no first-hand knowledge.  *See* Exhibit 13 to the Morgan Dec. at page 293:8-12 (Rousseau Dep. Tr.).

As evidenced by the above, Hickey Freeman had significant contact with Mr. Rousseau and Mr. Vossart, had been in receipt of Defendants' discovery responses for months before the deadline to add a party, and never raised any objection to Defendants' discovery responses.  In fact, in April 2018 Hickey Freeman affirmatively told the Court it had no remaining discovery issues.  *See* Transcript of April 19, 2018 Hearing at page 32:16, attached as Exhibit 33 to Morgan Dec. ("April 19, 2018 Hearing Tr.").  Further, if Hickey Freeman believed that Mr. Rousseau and Mr. Vossart were important enough to the case to send them each demand letters and quote one of

---

[10] *See* May 01, 2017, May 02, 2017 and May 03, 2017 emails from Alan Abramowicz and Stephen Granovsky to Bernard Vossart, attached as Exhibits 29, 30 and 31 to the Morgan Dec., respectively.
[11] *See* Exhibit 27 to the Morgan Dec. at page 52:6-7 (Abramowicz Dep. Tr.).
[12] *See* Exhibits 21 and 22 to the Morgan Dec. (Demand Letters from Stephen Granovsky and Plaintiff's Counsel).
[13] *See* Exhibit 27 to Morgan Dec. at pages 112:4-11 (Abramowicz Dep. Tr.); *see also* Exhibit 17 to Morgan Dec. at ¶ 22 (Plaintiff's Complaint).

13

them in its complaint, and assuming it believed that Defendants' discovery did not properly identify them, it could have sought an extension of the deadline to add parties. Hickey Freeman chose not to.

Likewise, Hickey Freeman's excuse that documents produced by Defendants do not reveal information that Chargeurs Entoilage or Fitexin had any operational involvement in Chargeurs S.A.'s interlining business only corroborates that neither party had anything to do with the sale of allegedly defective interlining to Hickey Freeman nor managing the subsidiaries in CFT. Further, the lack of references to Fitexin or Chargeurs Entoilage in marketing materials further corroborates that neither entity manufactures or sells interlining. In any event, Hickey Freeman concedes that it is an "acceptable business practice." *See* Plaintiff's MOL at page 7. Hickey Freeman's reliance on Mr. Rousseau's testimony is misplaced. Mr. Rousseau testified that previously as marketing manager for Europe-a jurisdiction that does not even cover Hickey Freeman-he did not develop marketing materials for CFT but rather provided general information on lines of product. *See* Exhibit 6 to Morgan Dec. at 95:12-96:7 (Rousseau Dep. Tr.).[14] Moreover, the document production that Hickey Freeman claims was not produced until after the deadline are largely public documents. *See* Plaintiff's MOL at page 8, referring to Exhibits J-M which are all public documents. In addition, the organizational chart that Defendants produced clearly showed Chargeurs Entoilage as the only direct subsidiary of Chargeurs S.A. and Fitexin as its indirect

---

[14] Indeed, Hickey Freeman's reference to Alexandre Marlien's deposition is misplaced. Mr. Marlien, a corporate designee of Lainiere de Picardie Inc., testified as to his personal LinkedIn page and how he prefers to use the name Chargeurs because it is a known company in France as opposed to Lainiere de Picardie Inc. which is in New York and in particular to attract recruiters to his personal page. *See* June 7, 2018 Deposition Transcript of Alexandre Marlien at 123:12-128:20, attached as Exhibit 41 to Morgan Dec. (Marlien Dep. Tr.). Furthermore his reference to CFT as a "trade name" refers to the fact that it is a trademark. *See* Exhibit 7 to Morgan Dec. (United States Patent and Trademark Office's TESS Results).

14

subsidiary.  Hickey Freeman's insinuation that this information could not be gleaned from the organizational chart due to Mr. Rousseau's testimony that it needs to be updated (*see* Plaintiff's MOL at page 9) is misleading because the changes he testified to do not disturb Chargeurs Entoilage or Fitexin's position within CFT.  *See* Exhibit 6 to Morgan Dec. at pages 107:7-109:25 (Rousseau Dep. Tr.).  In addition, Wujiang's Articles of Incorporation produced in unredacted form to Hickey Freeman (who only filed the previously redacted version with the Court) corroborates that Wujiang followed corporate formalities in addition to the fact that it is owned by Fitexin.  *See* Lainiere de Picardie (Wujiang) Textile Co. Ltd.'s Articles of Association with Corresponding Certified English Translation, attached as Exhibit 42 to Morgan Dec., *filed under seal.*

Similarly, Hickey Freeman's excuse that Defendants' website does not reveal information that Chargeurs Entoilage or Fitexin had any operational involvement in Chargeurs S.A.'s interlining business also corroborates that neither party had anything to do with the sale of allegedly defective interlining to Hickey Freeman nor managing the subsidiaries in CFT.  In any event, Hickey Freeman cites to information dated well after the deadline that discusses different divisions that make other products like wool, not interlining.  *See, e.g.*, Plaintiff's MOL at page 6, citing to a collection of press releases on www.chargeurs.fr/en/news where only 4 of the 22 press releases are dated prior to the deadline to add a party and of the 4 none are specific to any subsidiary in the CFT division including the already named parties but rather relate to results of a 2017 interim dividend, Chargeurs Luxury Materials (a non-CFT division that produces wool not interlining), a press release regarding Chargeurs Protective Films (a non- CFT division that produces adhesive films and tape not interlining), and a revenue press release relating to all four divisions.

15

Overall, the above shows that rather than performing due diligence, Hickey Freeman chose to hastily sue several defendants because it did not know which party was proper, chose to not even attempt to serve the manufacturer, chose not to raise any alleged discovery deficiency concerning identification of individuals, chose not to ask the Court to extend the deadline to add a party despite requesting multiple fact discovery extensions, chose not to include Chargeurs Entoilage and Fitexin documents in its motion to compel regarding Wujiang documents, and with fact discovery over before its brief will be fully submitted and one defendant already withdrawn that it admits had nothing to do with this case, asks the Court permission to take two more fishing expeditions.  Courts routinely deny motions under similar facts.  *See e.g.*, *De Malmanche*, 2011 WL 990165 at *6 (finding no good cause for amendment where information "was available to them at all relevant times, as it is contained in the online public record of the FSA Register, had they only acted with reasonable diligence in seeking it.")

### 2.  Hickey Freeman fails to comport with Federal Rules of Civil Procedure 15 and 21.

Even if Hickey Freeman demonstrated good cause under Federal Rule of Civil Procedure 16, the Court should still deny the Motion because its proposed amendment fails under the standards set forth in Federal Rule of Civil Procedure 15(a).  While Rule 15 provides that the Court should freely grant leave when "justice so requires," a motion to amend should nonetheless be denied under Rule 15(a) "if there is an 'apparent or declared reason—such as undue delay, bad faith or dilatory motive ..., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment." *Rambarran*, 2008 WL 850478 at *4.[15]  Further, "[w]here it appears that granting

---

[15] While Hickey Freeman seeks to add parties through its amendment, which is also governed by Rule 21, "that creates

leave to amend is unlikely to be productive [] it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

> i.     Hickey Freeman fails to comport with Rule 15 and 21 because in giving the Court three different versions of when and how it learned the allegedly new facts it basis its Motion on it acts in bad faith and with undue delay.

Hickey Freeman's claim that it recently learned that Fitexin and Chargeurs Entoilage were allegedly involved with CFT is specious given that Hickey Freeman has offered three different versions of not only when it learned this alleged information, but also the source of this information.   At first Hickey Freeman claimed that it received new information from Mr. Rousseau's testimony on June 12, 2018 and made no mention of any prior deposition.  *See* Exhibit 9 to Morgan Dec. (June 12, 2018 email from Frank D'Angelo to Caroline Morgan).  Indeed, Hickey Freeman went to great lengths to point out to the Court that it acted "immediately" by emailing opposing counsel the night of Mr. Rousseau's deposition seeking Defendants' consent to add Chargeurs Entoilage and Fitexin.  *See* Exhibit 3 to Morgan Dec. at page 3 (June 25, 2018 Letter Motion, citing to June 12, 2018 email).

Soon thereafter, the period of Hickey Freeman's alleged discovery grew from the first day of Mr. Rousseau's deposition to the last two weeks of June (Exhibit 11 to Morgan Dec. at 55:13-14, 58:22-25 (July 17, 2018 Hearing Tr.)), at "recent depositions" where Hickey Freeman only referenced Chargeurs S.A.'s deposition (*id.* at 54:13-15).

Now in its Motion, Hickey Freeman provides a third version to the Court, claiming that it discovered new information dating back in May 2018 to Lainiere de Picardie BC SAS's deposition,

---

no additional obstacle, as the showing necessary under Rule 21 is the same as that required under Rule 15(a)." *Soroof*, 283 F.R.D. at 147.

in addition to Mr. Rousseau's deposition and Chargeurs S.A.'s depositions in June 2018. Plaintiff's MOL at page 9. Hickey Freeman's "discovery" at Lainiere de Picardie BC SAS's deposition does not fit with the fact that it chose to conclude LP BC SAS's deposition in one day, despite that LDP BC SAS's corporate designee flew in from France at his company's cost and made himself available for two full days. *See* May 31, 2018 Deposition Transcript of Gilles Hourlier at 10:8-15 and 218:12-14, attached as Exhibit 34 to Morgan Dec. ("Hourlier Dep. Tr."). Indeed, Veratex did not even question LDP BC SAS. In light of the above, this Court should deny Hickey Freeman's Motion given the lack of credibility with regard to even the timing and source of the alleged new information that it learned. *See Dasrath*, 2014 WL 1760907 at *3-4 (denying leave to amend where movant relied on "self-serving misrepresentations" and factual contradictions in support of his motion).

      ii.     Hickey Freeman fails to comport with Rule 15 and 21 because it misconstrues the testimony it relies on to support its Motion.

Even if Hickey Freeman had decided on one story to tell the Court, the testimony of Lainiere de Picardie BC SAS, Chargeurs S.A. and Mr. Rousseau demonstrates that the subsidiaries within CFT, including Chargeurs Entoilage and Fitexin, operate as a decentralized structure with each subsidiary responsible for its day-to-day management and operations, and do not show that Fitexin and Chargeurs Entoilage have any operational involvement in CFT's interlining business.

Mr. Hourlier testified that neither Chargeurs S.A. nor CFT manage LDP BC SAS's operations. *See* Exhibit 34 to the Morgan Dec. at pages 101:24-102:4 (Hourlier Dep. Tr.). Moreover, that the manufacturing process is not set at the divisional level by CFT (*id.* at 113:7-19) but at the factory level (*id.* at 114:2-13). Further, it is evident from Mr. Hourlier's testimony (who was the first witness of the Defendants) that before his deposition counsel for Hickey

18

Freeman believed that Mr. Bernard Vossart was previously the head of CFT and that the current

head is Ms. Angela Chan.

"[Counsel]:  [Bernard Vossart's] no longer the head is he?

[Hourlier]: No.

[Counsel]: The current head, her name is Angela Chan; is that right?

[Hourlier]: Yes[.]"

*Id.* at 20:11-17.  Hickey Freeman cites to one sentence from Mr. Hourlier's deposition in its

Motion.  When asked whether Mr. Jean Luc Auverdin worked for LDP BC SAS, Mr. Hourlier

testified "[h]e is one for new products and he is at Fitexin, therefore, not LDP BC."  *Id.* at 91:5-6;

*see also* Plaintiff's MOL at page 10.  This testimony is silent as to any operational control that

Fitexin exerts as it merely provides who Mr. Auverdin works for.

Similar to LDP BC SAS, Charguers S.A.'s corporate designee Ms. Defait testified that the

subsidiaries in CFT are a decentralized network and that Chargeurs S.A. does not control the

management, production, or operations of its subsidiaries either directly or indirectly through an

intermediary, including Chargeurs Entoilage or Fitexin.  Specifically, Ms. Defait testified:

"Chargeurs, S.A. is a publicly listed company, it doesn't intervene in the day-to-day
management in the subsidiaries or the subsidiaries of its subsidiaries and it does not
intervene in the production processes of same."

*See* Exhibit 5 to the Morgan Dec. at 142:18-23 (Defait Dep. Tr.).  Ms. Defait further testified

clearly and succinctly that Chargeurs S.A. does not control the operations of any subsidiaries

through the following examination by Hickey Freeman's counsel:

Q.  Does Chargeurs, S.A. play any role in the manufacturing processes of any CFT
subsidiaries?

A.  No.

19

Q.  Does it play any role in determining what processes are implemented at new factories within the CFT division?

A.  No.

Q.  What about in ensuring that certain manufacturing processes are followed?

A.  No.  Chargeurs, S.A. never intervenes in anything having to do with the production by the subsidiaries of Chargeurs Entoilage.

*Id.* at 135:8-21.  Ms. Defait further testified:

Q.  Does Charguers, S.A. define a global outlook for any of its division's marketing activities?

A.  No.

*See* Exhibit 8 to Morgan Dec. at 213:25-214:3

Q.  Charguers, S.A. provides no guidance whatsoever as to what direction marketing should head in with respect to any of the products owned by its business divisions?

A.  No.

*Id. at* 214:10-15 (Defait Dep. Tr.).  Ms. Defait further testified that Charguers S.A. does not establish a direction for the various production lines, does not ensure that CFT is headed in the right direction (Exhibit 5 to the Morgan Dec. at page 69:18-20), and does not have the ability to fire the managing director of CFT. (*id.* at page 72:6-11).  Moreover, she testified that Chargeurs Entoilage and Fitexin are holding companies and that neither manufacture nor sell anything.  *Id.* at pages 98:21-99:3 and 103:9-14.  She also testified that Chargeurs S.A. does not intervene in the daily workings, the daily management of, or strategies of the subsidiaries.  *Id.* at page 132:18-24.  Rather, Chargeurs S.A. receives financial information from subsidiaries and then verifies it and that is what its regulation document means by its "control of operations."  *Id.* at page 133:21-25.

With regard specifically to Chargeurs Entoilage, Ms. Defait testified as follows:

Q.  So I want to know how, if any way, Charguers, S.A. guides [Charguers Entoilage], tells it what to do, if at all.

20

> A.  So Chargeurs Entoilage has its own president who is also the general manager, general director of that company, and he has all powers to represent the company, to act on behalf of it and to otherwise lead the company.  Chargeurs, S.A., it's role is as a shareholder, and it has its own bylaws and it is governed by those by law, by which I mean French law . . . and so Chargeurs, S.A. relationship to Chargeurs Entoilage doesn't have any specific power or prerogative over it."

*See* Exhibit 8 to Morgan Dec. at 180:14-181:13 (Defait Dep. Tr.).  Just as with Mr. Hourlier's testimony, Hickey Freeman flat out ignores Ms. Defait's testimony and argues that Chargeurs S.A. controls CFT through Chargeurs Entoilage and Fitexin, despite her testimony directly stating this is not the case.  To support its supposition, Hickey Freeman misconstrues Ms. Defait's testimony arguing that she testified that Chargeurs Entoilage is the "head" within the CFT division (Plaintiff's MOL at page 9); however, the full text of the question and answer demonstrates that Ms. Defait merely testified that Chargeurs Entoilage is a parent within CFT, a fact this Court has previously held is not dispositive of control.

> Q.  What's the highest legal entity within the Chargeurs group that's responsible for CFT?

> A.  It's a very broad question, but if you're making reference to the parent company, the division, that would be Chargeurs Entoilage.

*See* Exhibit 5 to Morgan Dec. at pg. 85:14-20 (Defait Dep. Tr.); *see also* Exhibit 33 to the Morgan Dec. at pg. 7:3-4 (April 19, 2018 Hearing Tr.) (holding that subsidiary status is not dispositive on control issue).  Hickey Freeman further attempts to misconstrue her testimony when it argues that Ms. Angela Chan, the current managing director of CFT, "reports" to the CEO of Chargeurs, S.A. regarding CFT "matters" on a monthly basis.  *See* Plaintiff's MOL at pages 9-10.  Her testimony, in its full context, reveals that Ms. Defait testified that Ms. Chan meets-as opposed to reports-to discuss just the financial state of CFT.  *See* Exhibit 5 to Morgan Dec. at 92:15-93:3 (Defait Dep. Tr.).  This makes sense given that Chargeurs S.A. is a publicly traded company.  Nowhere does Ms. Defait testify that Ms. Chan reports to Chargeurs S.A. on day-to-day operations of any of the

21

subsidiaries within CFT or any of their management.

Mr. Rousseau's testimony further corroborates Ms. Defait's and Mr. Hourlier's testimony that CFT is a decentralized network with each subsidiary retaining autonomy.  Hickey Freeman, like it did with Mr. Hourlier's and Ms. Defait's testimony, misconstrues the testimony of Mr. Rousseau.[16]  Mr. Rousseau testified "[t]here is no entity that controls the CFT entity."  *See* Exhibit 6 to Morgan Dec. at page 43:18-19 (Rousseau Dep. Tr.).  Further, he testified that no entity controls the day-to-day operations of CFT.  *Id.* at page 43:17-19.  Concerning Fitexin, he testified that it does not dictate the subsidiaries' manufacturing processes nor does Fitexin dictate quality control or inspection processes of its subsidiaries. *Id.* at page 115:11-22.  Further, he testified that Fitexin has controlling shares of subsidiaries in CFT, not operational control.  *Id.* at page 36:20-22.  In fact, Fitexin does not speak to day-to-day operations or management of the subsidiaries.  *Id.* at pages 131:16-132:11.  Indeed, the decentralized organization of CFT and respect of corporate formalities is evident in the fact that LDP BC SAS and Fitexin operate out of a building that Chargeurs Entoilage owns, but both pay rent to Chargeurs Entoilage.  *Id.* at pages 46:23-47:1.  Similarly, Fitexin has service contracts with some subsidiaries wherein it provides services, none of which apply to manufacturing or marketing, and gets paid for rendering the services.  *Id.* at page 140:7-16.  Fitexin provides financial support and assistance, human resources, and computer applications.  *Id.* at page 141:20-142:3.  Mr. Rousseau testified that the purpose of Chargeurs Entoilage is not to control Fitexin. *Id.* at page 42:11-15.  During his time at Fitexin, he has not seen any quality inspection standards, nor is he aware of any such documents being submitted to anyone

---

[16] Hickey Freeman misrepresents the basic fact of who employs Mr. Rousseau.  Mr. Rousseau testified that he is employed by Fitexin (*see* Exhibit 6 to Morgan Dec. at page 80:17-18 (Rousseau Dep. Tr.); however, Hickey Freeman refers to him as a "Chargeurs S.A. representative" in its Motion with no support.  *See* Plaintiff's MOL at page 1.

in Fitexin.  *See* Exhibit 13 to Morgan Dec. at pages 333:15-334:7.  Indeed, at the annual sales meeting, the only meeting Mr. Rousseau could recall where CFT managers meet, he has never heard discussions concerning manufacturing or quality control processes.  *Id.* at page 338:4-12.

Hickey Freeman tries to get around the above testimony by parsing out certain quotes, but this only misconstrues the testimony.  Mr. Rousseau testified that Chargeurs Entoilage is a parent within CFT and nothing more when he states ". . . Chargeurs Entoilage is – in terms of its definition as a legal entity as of its shareholder structure – is the hierarchal superior of all the other entities in the division."  *See* Exhibit 6 to Morgan Dec. at page 40:3-7 (Rousseau Dep. Tr.)  Mr. Rousseau testified again only as to its parent status when it confirmed that the organizational chart produced in the litigation showed Chargeurs Entoilage as a parent and that it was in a circle drawn around certain entities with the label CFT.  *Id.* at page 104:2-12.  Hickey Freeman goes so far as to argue-without providing any support-that it is a "fact" that Chargeurs S.A. control's Mr. Rousseau, a Fitexin employee, because he appeared for his deposition without a subpoena.  Plaintiff's MOL at page 24.  As stated previously, Chargeurs S.A. did not produce Mr. Rousseau, he voluntarily agreed to travel to the United States to be deposed in good faith.  *See* Defendants' June 28, 2018 Letter Motion at page 3, attached as Exhibit 35 to Morgan Dec.   Accordingly, because Hickey Freeman turns a blind eye to an abundance of testimony controverting its allegations, this Court should deny the Motion.  *See Dasrath* 2014 WL 1760907 at *7 (court denied motion to add a party where movant relies on portions of deposition transcript whilst simultaneously ignoring other portions of testimony that directly controverted movant's alleged new facts).

> iii.    Hickey Freeman fails to comport with Rule 15 and 21 because adding Chargeurs Entoilage and Fitexin would unduly prejudice defendants.

A party fails to meet the standard for amendment under Rule 15 if an amendment results in undue delay or prejudice.  *See iMedicor, Inc. v. Access Pharmaceuticals, Inc.*, 290 F.R.D. 50,

52 (S.D.N.Y. 2013).  "Leave to amend may be denied where the proposed amendment [] would result in prejudice to the opposing parties[.]"  *Soroof*., 283 F.R.D. at 147; *see also Rambarran*, 2008 WL 850478 at *4 (S.D.N.Y. Mar. 28, 2008) (a motion to amend a pleading under Rule 15(a) should be denied if there is "undue prejudice to the opposing party by virtue of the allowance of an amendment[.]").

Here, Hickey Freeman's Motion will be fully briefed after the close of fact discovery, the deadline of which has already been extended three times.  *See* Court's Orders extending fact discovery dated November 21, 2017, February 2, 2018 and April 27, 2018, attached as Exhibits 36, 37 and 38 to Morgan Dec., respectively.  Hickey Freeman's argument that the case will be delayed anyway if Wujiang is served would improperly allow it to gain a litigation advantage and reward for waiting until May 14, 2018, long after it filed the complaint, to even attempt service on the manufacturer, no less in a product defect case.  *See* Exhibit 12 to Morgan Dec. (Plaintiff's Request for Issuance of Summons).  It also fails to consider that Chargeurs Entoilage and Fitexin may wish to retain different counsel or begin conducting discovery of its own, thus resulting in significant costs to both and further delay to Defendants.

Moreover, the above referenced lack of due diligence on Hickey Freeman's part has already unfairly prejudiced Defendants by extending the duration of the litigation by Hickey Freeman suing LDP BC SAS, a party that Hickey Freeman ultimately determined had nothing to do with the matter[17].  *See* Exhibit 9 to the Morgan Dec. (June 12, 2018 email from Frank D'Angelo

---

[17] Indeed, Hickey Freeman even delayed withdrawing Lainiere de Picardie BC SAS even after it stated that it was "not a proper defendant."  *See* Exhibit 9 to Morgan Dec. (June 12, 2018 email from F. D'Angelo); *see also* email dated August 15, 2018, two months later, providing a stipulation of dismissal two days before Plaintiff filed its Motion, attached as Exhibit 43 to the Morgan Dec.  It appears that the impetus for the stipulation was the Motion as opposed

24

to Caroline Morgan). Defendants have a right to a timely disposition of the case, especially where Hickey Freeman has not exercised due diligence.

Under similar circumstances courts have denied motions to amend or add a party. *See Chepilko v. City of New York*, 2010 WL 3926186, at *2 (E.D.N.Y. Sept. 8, 2010) ("Allowing plaintiff to amend at this juncture would prejudice defendants in that defendants have already deposed plaintiff and discovery is about to close."); *Zucker v. Porteck Glob. Servs., Inc.*, 2015 WL 6442414, at *8 (E.D.N.Y. Oct. 23, 2015) ("significant prejudice would inure to [the proposed new defendant] should he be forced to begin conducting discovery at this advanced stage of the case"); *Olaf Soot Design, LLC v. Daktronics, Inc.*, 299 F. Supp. 3d 395, 399 (S.D.N.Y. 2017) ("Prejudice can exist if an amendment would . . . 'significantly delay' the resolution of the dispute."); *Cintron v. Weissman*, 2015 WL 5604954, at *6 (N.D.N.Y. Sept. 23, 2015) ("Joining [the proposed defendant] at this juncture would require discovery to be reopened and would work unfair prejudice on the defendants, who have the right to a timely disposition of this matter."); *see also Schnepf v. Jerome H. Siegel, M.D., P.C.*, 1998 WL 474132, at *1 (S.D.N.Y. July 11, 1998) ("Prejudice may be found, for example, when the amendment is sought after discovery has been closed[.]");*Kontarines v. Mortg. Elec. Registration Sys., Inc.*, 2016 WL 3821310, at *4 (E.D.N.Y. July 12, 2016) ("[A]llowing plaintiff to add [] new defendants would materially expand the litigation and would necessarily prejudice the existing defendant, as it would require the reopening of fact discovery. Such a result would not only increase defendant's litigation expenses, but would further delay the resolution of this matter[.]").

---

to "good faith" as Hickey Freeman claims. *See* Plaintiff's MOL at page 13.

Finally, Hickey Freeman's representation that it may file a separate action if its Motion is denied and then just move to consolidate falls flat.  *See* Plaintiff's MOL at page 18.  Numerous courts have held that where a plaintiff claims it has little to no further discovery if a party were added, as Hickey Freeman here claims, then the ability for a movant to file a new action supports denying a motion to amend or add a party.  As the court in *H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.* reasoned:

> "Plaintiffs are free to bring a separate action[.]  Whatever facts are established through the instant litigation will be available for appropriate use in such an action, and, if plaintiffs are sincere in their assertions that they need no further discovery[,] such an action could reach disposition relatively quickly and with little more effort than would be expended herein if [the new party] were now to become a defendant.  It is high time for this action to be resolved, and plaintiff's motion is, accordingly, denied."

112 F.R.D. 417, 423 (S.D.N.Y. 1986); *see also Dawson v. Pelican Mgmt, Inc.*, 2012 WL 2357308 at *4 (E.D.N.Y. June 1, 2012) (court denies leave to amend where plaintiff suffers no prejudice since she admits that she could timely bring a separate action).  Accordingly, in light of the above, this Court should deny Hickey Freeman's Motion.

## II.     Chargeurs SA Should Not Be Compelled to Produce All Responsive Documents in the Possession of Fitexin or Chargeurs Entoilage.

Under Federal Rule of Civil Procedure Rule 34(a), "a party can be compelled to produce documents only if it has either possession of the documents or "control" of them, which is customarily interpreted as requiring that the party have 'the legal right to obtain the documents requested on demand.'"  *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 (S.D.N.Y. 1992).  The party seeking discovery "bears the burden of demonstrating that [the party] has 'possession, custody or control' of the [documents] [and] it must affirmatively show that [the party] enjoys such authority."  *In re: Application of Passport Special Opportunities Master Fund*,

2016 WL 844833, at *5 (S.D.N.Y. Mar. 1, 2016).  As the Court previously noted, the question of control can be determined by consideration of the following four factors: "[1]the degree and control exercised by the parent over the subsidiary, [2] a showing that the two entities operate as one, [3] demonstrated access to documents in the ordinary course of business, and [4] an agency relationship."  *Sicav v. Wang*, 2014 WL 2624753, at *4 (S.D.N.Y. June 12, 2014); *see also* Exhibit 33 to the Morgan Dec. at page 6:16-22 (April 19, 2018 Hearing Tr.).  This Court should deny Hickey Freeman's Motion because it fails to meet its burden to show that Chargeurs S.A. has control of documents in the possession of Chargeurs Entoilage and Fitexin under the *Sicav* four factor test.

       i.      Hickey Freeman fails the four factor test under *Sicav* and thereby fails to show that Chargeurs S.A. controls Chargeurs Entoilage or Fitexin.

Turning to the first factor, the degree of control a parent exercises over a subsidiary, though Chargeurs S.A. owns one hundred percent of the shares of Chargeurs Entoilage and Chargeurs Entoilage in turn owns one hundred percent of Fitexin, "mere ownership by a parent [] is not a decisive factor, but merely one factor among several."  *See Sicav*, 2014 WL 2624753 at *5.  Hickey Freeman's repeated mischaracterizations of Ms. Defait's testimony do not show control.  Ms. Defait testified that Fitexin's supervisory board is comprised of Chargeurs S.A. and Chargeurs Boissy, not that the board has the power to fire Fitexin's President.  *See* Exhibit 8 to the Morgan Dec. at 179:2-13.  Further, the record reflects that Fitexin has all the powers to engage with commitments on behalf of the company with regard to third parties and the supervisory board of Fitexin, consisting of an individual from Chargeurs S.A. and Chargeurs Boissy has only met once since it was created.  *See* Exhibit 5 to Morgan Dec. at 105:22-25 and 107:11-21 (Defait Dep. Tr.).  In *Sicav*, the court noted that limited instances of control, such as one meeting, does not impact

the limited authority of a parent over a subsidiary.  *See, e.g.*, *Sicav*, 2014 WL 2624753 at *6.  Even assuming Hickey Freeman's assertions of Chargeurs S.A.'s ability to control Chargeurs Entoilage or Fitexin are true, which they are not, courts are persuaded by actual exertion of control rather than just mere ability.  *Id.* ("the lack of any track record in which [a parent] has *actually exerted control* points [against]  . . . plaintiffs in their bid for [the] subsidiaries' documents") (emphasis added).

Similarly, Chargeurs S.A. as a shareholder of Chargeurs Entoilage approves the accounts of Chargeurs Entoilage because it has a legal obligation to do so, but if it wished to make any changes it could not, only the auditor can.  *See* Exhibit 8 to Morgan Dec. at 208:16-209:18 (Defait Dep. Tr.).  Further, Hickey Freeman provides no testimony to support that Chargeurs S.A. receives individual financial statements from Chargeurs Entoilage or Fitexin, rather it just notes that accounts are consolidated.   In *Sicav*, the court found that receipt of consolidated financial statements from its outside counsel did not constitute control over its subsidiary.  *See Sicav*, 2014 WL 2624753 at *5.  In any event, financial documents would not be responsive to any of the document demands of Hickey Freeman so Chargeurs S.A.'s access to same is irrelevant.  *See In re Vivendi Universal, S.A. Sec. Litig.*, 2009 WL 8588405, at *4 (S.D.N.Y. July 10, 2009) (where subpoena did not seek financial documents, parent's access to same of subsidiary had very little relevance).

With regard to the second factor, a showing that the two entities operate as one, Chargeurs S.A. does not share any employees, facilities, office space or utilize common practices and forms with either Chargeurs Entoilage or Fitexin and Hickey Freeman does not state otherwise.  Moreover, "[it is not sufficient], in the absence of a showing of actual control, [] that

28

the parent and subsidiary have interlocking officers and directors." *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 3822883, at *7 (S.D.N.Y. Aug. 30, 2017). With regard to Hickey Freeman's argument that Chargeurs Entoilage, Chargeurs S.A., and Fitexin "all work together to steer strategic, financial, and operational matters for CFT", even assuming true, does not demonstrate that Chargeurs Entoilage and Fitexin's documents are within Chargeurs S.A.'s control. The second factor requires a showing that the subsidiaries are the alter ego of the parent and here Hickey Freeman argues that all three work together for the benefit of CFT, not Chargeurs S.A.

Concerning the third factor, demonstrated access to documents in the ordinary course of business, Chargeurs S.A. does not have access in the ordinary course of business to Chargeurs Entoilage or Fitexin's documents. Chargeurs S.A. does not have access to the server of Chargeurs Entoilage or Fitexin. *See* Exhibit 5 to Morgan Dec. at 125:13-18 (Defait Dep. Tr.). Further, Chargeurs S.A. could not compel Chargeurs Entoilage to provide documents absent court intervention. *Id.* at 101:22-102:11. Concerning Fitexin, Mr. Rousseau spoke to one employee of Wujiang; however, this was in furtherance of this Court's Order, not in the ordinary course of business. *See* Exhibit 13 to Morgan Dec. at 345:8-13 (Rousseau Dep. Tr.). Similarly, any discussions between Hickey Freeman and Mr. Rousseau does not speak to Chargeurs S.A.'s ability to obtain documents from Fitexin or Chargeurs Entoilage in the ordinary course of business, nor is there any evidence that Chargeurs S.A. asked Fitexin to speak to Hickey Freeman.[18] Previously the Court noted in granting Hickey Freeman's motion to compel the production of Wujiang

---

[18] Similarly Chargeurs S.A. did not produce Mr. Rousseau for deposition; he voluntarily agreed in good faith. Hickey Freeman provides no evidence that Chargeurs S.A. compelled him to.

ACTIVE\64565750.v3-9/14/18

documents that evidence suggests that Chargeurs S.A. manages the central operational functions of the subsidiary members of its family (*see* Exhibit 33 to the Morgan Dec. at page 10:6-10 (April 19, 2018 Hearing Tr.); however, previously this Court did not have any deposition transcripts to consider.  Ms. Defait, who authored portions of the Registration document (*see* Exhibit 5 to Morgan Dec. at page 51:13-16 (Defait Dep. Tr.)), has since testified that Chargeurs S.A. does not manage the strategy of its subsidiaries (*id.* at page 131:13-16), and does not intervene in the day-to-day workings or the daily management of the subsidiaries or their strategies (*Id.* at page 132:18-24).  Instead, Charguers S.A. provides a vision of excellence that is passed on by its CEO to the heads of respective divisions who in turn communicate the vision to the subsidiaries and "it's purely a vision, it's purely a message, in no way is a decision taken on a given subject.  It's the divisions that are free and independent in defining themselves, their marketing or their business strategies."  *See* Exhibit 8 to the Morgan Dec. 221:12-23; *see also id.* at 217:22-25.  Concerning the "critical documents" Hickey Freeman alleges that Chargeurs S.A. has, the supervisory board decisions, articles of association and similar corporate documentation are all publicly available through Infogreffe.  *See* Exhibit 23 to the Morgan Dec. (Infogreffe Materials).

Regarding the fourth factor, an agency relationship, Hickey Freeman's motion is silent as to any agency relationship between Chargeurs S.A. and either Fitexin or Chargeurs Entoilage.  Moreover, the record is devoid of evidence indicating any agency.  Accordingly, in light of the above, this Court should deny Hickey Freeman's motion to compel.

## CONCLUSION

In light of the above, Chargeurs S.A. and Lainiere de Picardie Inc. respectfully request that this Court deny Hickey Freeman's motion to amend and motion to compel.

30

Dated: September 14, 2018

By: <u>/s/ Caroline A. Morgan</u>
     Caroline A. Morgan, Esq.
     FOX ROTHSCHILD LLP
     101 Park Avenue, Suite 1700
     New York, New York 10178
     Telephone: (212) 878-7900
     cmorgan@forxrothschild.com

     *Attorneys for Defendant Chargeurs, S.A. and*
     *Lainiere de Picardie, Inc.*

31