UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
HICKEY FREEMAN TAILORED                                     :
CLOTHING, INC.,                                             :
                                                            :
                        Plaintiff,                          :
                                                            :   Case No. 17 Civ. 5754 (KPF)
            -against-                                       :
                                                            :   Hon. Katherine Polk Failla
CHARGEURS, S.A., LAINIÉRE DE                                :
PICARDIE BC SAS, LAINIÉRE DE                                :
PICARDIE INC., LAINIÉRE DE PICARDIE                         :
(WUJIANG) TEXTILES CO. LTD, AND                             :
VERATEX LINING LTD,                                         :
                                                            :
                        Defendants.                         :
------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND TO COMPEL DISCOVERY

LOEB & LOEB LLP
Wook Hwang
Frank D. D'Angelo
345 Park Avenue
New York, New York 10154
(212) 407-4000

*Counsel for Plaintiff Hickey Freeman Tailored Clothing, Inc.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ........................................................................................................................... 5

I.     The Motion for Leave to Amend Should Be Granted............................................. 5

       A.     Hickey Freeman Has Demonstrated Good Cause Under Rule 16 ........................ 5

             1.     Hickey Freeman Was Not Aware of the Fact and Extent of Fitexin's and Chargeurs Entoilage's Involvement in this Case Prior to Depositions in June 2018 ................................................................. 5

             2.     Hickey Freeman Could Not, Through Ordinary "Due Diligence," Have Discovered the Fact and Extent of Fitexin's and Chargeurs Entoilage's Involvement in this Case ................................ 5

       B.     Hickey Freeman Has Satisfied Rules 15 and 21 ..................................................... 8

             1.     Chargeurs Points to No Bad Faith on Hickey Freeman's Part ..................... 8

             2.     The Proposed Amendment Will Not Give Rise to Undue Prejudice ......................................................................................................... 10

II.     The Motion to Compel Should Be Granted ........................................................ 12

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Capitol Records, Inc. v. Mp3tunes, LLC,*
No. 07 Civ. 9931, 2009 U.S. Dist. LEXIS 96521 (S.D.N.Y. Oct. 16, 2009) ............................9

*Chepilko v. City of New York,*
No. 06 Civ. 5491, 2010 U.S. Dist. LEXIS 103080 (E.D.N.Y. Sept. 8, 2010)........................12

*Cintron v. Weissman,*
No. 14 Civ. 0116, 2015 U.S. Dist. LEXIS 127313 (N.D.N.Y. Sept. 23, 2015) ......................12

*Circle Line Sightseeing Yachts, Inc. v. Circle Line-Statue of Liberty Ferry, Inc.,*
No. 01 Civ. 9788, 2003 U.S. Dist. LEXIS 1501 (S.D.N.Y. Feb. 3, 2003) ...............................9

*DaCosta v. City of New York,*
296 F. Supp. 3d 569 (E.D.N.Y. 2017) ................................................................................3, 5

*De Malmanche v. Glenrock Asset Mgmt. Assocs., L.P.,*
No. 07 Civ. 10940, 2011 U.S. Dist. LEXIS 28632 (S.D.N.Y. Mar. 16, 2011).........................6

*Dietrich v. Bauer,*
No. 95 Civ. 7051, 2000 U.S. Dist. LEXIS 11729 (S.D.N.Y. Aug. 9, 2000) ...........................12

*Elliott v. City of Hartford,*
No. 09 Civ. 948, 2012 U.S. Dist. LEXIS 112969 (D. Conn. Aug. 10, 2012)...........................6

*Enzymotec Ltd. v. NBTY, Inc.,*
754 F. Supp. 2d 527 (E.D.N.Y. 2010) .....................................................................................3

*Fresh Del Monte Produce, Inc. v. Fresh Del Monte Foods, Inc.,*
304 F.R.D. 170 (S.D.N.Y 2014) ............................................................................................11

*H.L. Hayden Co. of NY, Inc. v. Siemens Med. Sys., Inc.,*
112 F.R.D. 417 (S.D.N.Y. 1984) ......................................................................................11, 12

*IMG Fragrance Brands, LLC v. Houbigant, Inc.,*
679 F. Supp. 2d 395 (S.D.N.Y. 2009).....................................................................................6

*JPMorgan Chase Bank, N.A. v. IDW Group, LLC,*
No. 08 Civ. 9116, 2009 U.S. Dist. LEXIS 39858 (S.D.N.Y. May 12, 2009)........................10

*Kontarines v. Mortg. Elec. Registr. Sys.,*
No. 15 Civ. 2206, 2016 U.S. Dist. LEXIS 90283 (July 12, 2016) .........................................12

*Moore v. Publicis Groupe SA*,
    No. 11 Civ. 1279, 2012 U.S. Dist. LEXIS 92675 (S.D.N.Y. June 28, 2012)...........................3

*Nycomed U.S., Inc. v. Glenmark Generics Ltd.*,
    No. 08 Civ. 5023, 2010 U.S. Dist. LEXIS 29267 (E.D.N.Y. Mar. 26, 2010) ..........................2

*Olaf Sööt Design, LLC v. Daktronics, Inc.*,
    299 F. Supp. 3d 395 (S.D.N.Y. 2017)....................................................................................12

*Perez v. MVNBC Corp.*,
    No. 15 Civ. 6127, 2016 U.S. Dist. LEXIS 165136 (S.D.N.Y. Nov. 29, 2016) .........................3

*Salomon v. Adderley Indus., Inc.*,
    960 F. Supp. 2d 502 (S.D.N.Y. 2013).......................................................................................3

*Schnepf v. Jerome H. Siegel, P.C.*, No. 98 Civ. 1255, 1998 U.S. Dist. LEXIS
    12386 (S.D.N.Y. Aug. 11, 1998) ............................................................................................12

*SEC v. Credit Bancorp, Ltd.*,
    194 F.R.D. 469 (S.D.N.Y. 2000) ............................................................................................14

*Sicav v. Wang*,
    No. 12 Civ. 6682, 2014 U.S. Dist. LEXIS 81098 (S.D.N.Y. June 12, 2014)....................12, 13

*In re Ski Train Fire of November 11, 2000 Kaprun Aus.*,
    MDL No. 1428, 2006 U.S. Dist. LEXIS 29987 (S.D.N.Y. May 16, 2006).............................14

*Smith v. Johnson & Johnson*,
    No. 99 Civ. 10607, 2000 U.S. Dist. LEXIS 15544 (S.D.N.Y. Oct. 23, 2000) ..........................9

*Zucker v. Porteck Global Servs.*,
    No. 13 Civ. 2674, 2015 U.S. Dist. LEXIS 144132 (E.D.N.Y. Oct. 23, 2015) ........................12

**Other Authorities**

Fed. R. Civ. P. 15..............................................................................................................................8

Fed. R. Civ. P.16..............................................................................................................................5

Fed. R. Civ. P. 21.............................................................................................................................8

Fed. R. Civ. P. 37.............................................................................................................................4

## PRELIMINARY STATEMENT

At no point prior to the December 29, 2017 deadline for amended pleadings did Chargeurs[1] disclose to Hickey Freeman the existence of Fitexin and Chargeurs Entoilage, much less the various ways in which those entities are intimately involved in Chargeurs' interlining business. Prior to that date, Chargeurs' discovery responses and written disclosures were silent as to those entities and Chargeurs had produced no documents at all to Hickey Freeman—much less documents mentioning Fitexin and Chargeurs Entoilage—despite Hickey Freeman serving document requests three months earlier and following up with multiple inquiries regarding the lack of production in writing and by telephone. (D'Angelo Reply Decl. Exs. A-C).[2]

It was not until depositions of defendants' witnesses in June 2018 that Hickey Freeman learned the following regarding Fitexin and Chargeurs Entoilage (among other things):

- "Fitexin supervises the day-to-day operations of Chargeurs Fashion Technologies," i.e. "CFT," Chargeurs' interlining division (D'Angelo Decl. Ex. V [Rousseau Dep. Tr.] at 42:16-43:8);

- Fitexin "develop[s]" interlining products to be manufactured and sold by Chargeurs and its distributors (*id.* at 117:22-119:9);

- Fitexin "determin[es] what models of interlining are manufactured" at which CFT manufacturing facilities (*id.* at 122:11-17);

- Fitexin spearheads "initial implementation of quality control or inspection standards" and "manufacturing standards" at CFT's manufacturing facilities (*id.* at 115:16-117:6);

- Fitexin "market[s] CFT's interlining" and otherwise works "to get other people or other companies to buy CFT's fusible interlining," including by delivering "general presentations [regarding] the whole line of CFT products" (*id.* 93:5-97:19);

- Fitexin assists the various CFT entities with interlining-related client issues, including by

---

[1] All capitalized terms have the same meanings ascribed to them in Hickey Freeman's moving brief ("Mov. Br.").

[2] "D'Angelo Reply Decl." refers to the accompanying Reply Declaration of Frank D'Angelo, submitted herewith. "D'Angelo Decl." refers to the Declaration of Frank D'Angelo dated August 17, 2018 [Dkt. No. 77], submitted with Hickey Freeman's moving brief.

"accompan[ying] [them] to see clients to discuss various technical options" for interlining products (*id.* Ex. Y [Marlien Dep Tr.] at 132:13-133:13);

- Fitexin "build[s] and develop[s] an overall global strategy and decision-making process" for CFT (*id.* Ex. V [Rousseau Dep Tr.] at 114:2-115:9);

- Chargeurs Entoilage "bore the contract of the managing director of the [CFT] division," (*id.* at 38:2-25, 39:21-25); and

- Chargeurs Entoilage is "the hierarchal superior of all the other entities in the [CFT] division" (*id.* at 39:14-40:7).

Thus, it was only during the June 2018 depositions that Hickey Freeman learned that Fitexin and Chargeurs Entoilage were directly involved in, and possessed information about, matters critical to Hickey Freeman's claims that the interlining at issue was defective and breached certain express and implied warranties—*e.g.*, the technical and performance aspects of Chargeurs' interlining, how it is manufactured and inspected, and how it is marketed to customers.

Chargeurs mischaracterizes the motion to amend as seeking to join Fitexin and Chargeurs Entoilage merely because they are subsidiaries of Chargeurs and parent companies to the Lainiere defendants, and argues that Hickey Freeman should have been aware of that corporate relationship through a handful of public reports (none of which were produced in discovery) identifying Fitexin and Chargeurs Entoilage. But this is simply not the case. It is the *fact and extent* of those entities' involvement in interlining development, manufacturing, inspection, and marketing—not their mere existence within the Chargeurs corporate structure—that serves as the basis for this motion. *None* of that information appears in any public documents. It is well settled that Hickey Freeman "cannot be faulted for failing to comply with the . . . deadline for amending the pleadings" because it "did not acquire the information underlying the proposed amendment until after the expiration of that deadline." *Nycomed U.S., Inc. v. Glenmark Generics Ltd.*, No. 08 Civ. 5023, 2010 U.S. Dist. LEXIS 29267, at *34 (E.D.N.Y. Mar. 26, 2010). Indeed,

2

"[i]t was reasonable for [Hickey Freeman] to use the discovery devices available to ensure that [it was] naming the correct defendant[s]." *DaCosta v. City of New York*, 296 F. Supp. 3d 569, 606 (E.D.N.Y. 2017).[3]

In the absence of such deposition testimony, and prior to commencing this litigation, defendants led Hickey Freeman to believe that Lainiere France was the primary entity responsible for Chargeurs' interlining division, not Fitexin and Chargeurs Entoilage. Indeed, in April 2017, Hickey Freeman reached out to Veratex's representative Barry Diamond to alert him to increasingly alarming customer complaints regarding the defective interlining. (Abramowicz Decl. ¶¶ 4-7).[4] Mr. Diamond suggested that Hickey Freeman contact Bernard Vossart to escalate the issue and advised that Mr. Vossart worked for "Lainiere de Picardie BC." (*Id.* ¶¶ 7-8 & Ex. A). Shortly thereafter, Hickey Freeman directed two demand letters to Chargeurs, copying Mr. Vossart as an employee of Lainiere France. (*Id.* ¶ 9 & Ex. B; D'Angelo Reply Decl. Ex. I). Defendants *never* disputed that Mr. Vossart was affiliated with that company nor that Hickey Freeman properly identified that company as a potential defendant. (Abramowicz Decl. ¶¶ 4-10). Over a year later, well into this litigation and after the deadline for amended pleadings had passed, defendants belatedly disclosed that Lainiere France was not involved in this case—and produced witnesses testifying that Fitexin and Chargeurs Entoilage were. For all these reasons, leave to amend should be granted.

In any event, and regardless of whether Fitexin and Chargeurs Entoilage are added as defendants, Chargeurs should be compelled to produce responsive documents within those

---

[3] *Accord, e.g., Perez v. MVNBC Corp.*, No. 15 Civ. 6127, 2016 U.S. Dist. LEXIS 165136, at *10-13 (S.D.N.Y. Nov. 29, 2016); *Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 507 (S.D.N.Y. 2013); *Moore v. Publicis Groupe SA*, No. 11 Civ. 1279, 2012 U.S. Dist. LEXIS 92675, at *11-13 (S.D.N.Y. June 28, 2012); *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010).

[4] "Abramowicz Decl." refers to the Declaration of Alan Abramowicz submitted herewith.

entities' possession.  Although Chargeurs attempts to distance itself from Fitexin and Chargeurs Entoilage, it does not dispute any of the following facts in Hickey Freeman's moving brief (*compare* Mov. Br. 22-24, *with* Opp. 27-30), which together are more than sufficient to demonstrate "control" for the purposes of Fed. R. Civ. P. 37:

- Chargeurs owns 100% of Chargeurs Entoilage and, through Chargeurs Entoilage, 100% of Fitexin.  (Mov. Br. 22; D'Angelo Decl. Ex. W [Defait Dep. Tr.], at 85:21-86:6, 179:22-24).

- Chargeurs retains approval authority with respect to internal decision-making at Fitexin and Chargeurs Entoilage.  (Mov. Br. 22; D'Angelo Decl. Ex. W [Defait Dep. Tr.], at 105:20-107:10, 176:6-177:24).

- Chargeurs works together with Fitexin and Chargeurs Entoilage on strategic, financial, and operational matters for CFT.  (Mov. Br. 22-23; D'Angelo Decl. Ex. W [Defait Dep. Tr.] at 65:13-69:13, 88:15-91:18).

- Chargeurs shares corporate officers with Fitexin and Chargeurs Entoilage.  (Mov. Br. 23; D'Angelo Decl. Ex. W [Defait Dep. Tr.], at 92:15-93:11; *id.* Ex. N, at 86).

- Chargeurs maintains a liability insurance policy for Fitexin and Chargeurs Entoilage.  (Mov. Br. 23; D'Angelo Decl. Ex. W [Defait Dep. Tr.] at 267:13-270:18; *id.* Ex. V [Rousseau Dep. Tr.], at 143:23-144:24).

- Chargeurs tasked a Fitexin employee with responsibility to manage this litigation for Chargeurs and to help gather documents on its behalf to produce to Hickey Freeman.  (Mov. Br. 23; D'Angelo Decl. Ex. V [Rousseau Dep. Tr.], at 147:3-11, 341:18-345:13).

Even as to those facts which Chargeurs does attempt to dispute, the record overwhelming supports the conclusion that Chargeurs controls the documents of Fitexin and Chargeurs Entoilage.  In the words of Chargeurs' corporate representative, if Chargeurs wishes to obtain documents from Fitexin and Chargeurs Entoilage, it can simply ask their President for them and, and, if she refuses, "chang[e] the president of Chargeurs Entoilage."  Or, "[i]n actual deed, in fact, Chargeurs, S.A. could ask an[other] employee of Fitexin" for those documents.  (Mov. Br. 24; D'Angelo Decl. Ex. W [Defait Dep. Tr.] at 101:9-102:21, 108:23-109:12).  Under these circumstances, Chargeurs should be compelled to produce those documents.

4

# ARGUMENT

## I. THE MOTION FOR LEAVE TO AMEND SHOULD BE GRANTED

### A. Hickey Freeman Has Demonstrated Good Cause Under Rule 16

#### 1. Hickey Freeman Was Not Aware of the Fact and Extent of Fitexin's and Chargeurs Entoilage's Involvement in this Case Prior to Depositions in June 2018

Hickey Freeman was not, as Chargeurs argues (Opposition ("Opp.") 7-9), aware of the facts which serve as the basis for this motion in April 2018. The Court's April 19, 2018 Order simply confirmed that Fitexin was the parent company for Lainiere Textiles; it said nothing about Fitexin or Chargeurs Entoilage being involved in interlining product development, manufacturing, quality control, marketing, strategy, or decision making. Nor did Chargeurs' April 26, 2018 motion for a protective order—which disclosed for the first time that Mr. Rousseau was an employee of Fitexin—disclose those business activities. It was reasonable for Hickey Freeman to wait until deposing Mr. Rousseau and other witnesses in June to determine whether and how Fitexin and Chargeurs Entoilage was actually involved in the facts underlying this litigation before seeking to add them as parties. *See DaCosta*, 296 F. Supp. 3d at 606. In any event, even if Hickey Freeman were fully aware of the basis for its motion in April 2018, that was well after the December 2017 deadline for amended pleadings.[5]

#### 2. Hickey Freeman Could Not, Through Ordinary "Due Diligence," Have Discovered the Fact and Extent of Fitexin's and Chargeurs Entoilage's Involvement in this Case

Hickey Freeman could not have learned the facts supporting its motion for leave to amend through the handful of theoretically public documents that Chargeurs submits with its Opposition. Neither the D&B report nor the Hoovers report discuss Fitexin's or Chargeurs

---

[5] Hickey Freeman's August 8, 2017 letter to the Court does not indicate that it was aware of Fitexin's and Chargeurs Entoilage's involvement in this case at that earlier juncture. (Opp. 9; Morgan Decl. Ex. 39). That letter is silent as to Fitexin and Chargeurs Entoilage, and mentions only the Lainiere defendants.

5

Entoilage's involvement in interlining product development, manufacturing, quality control, marketing, strategy, or decision making.[6] At most, they show that those companies reside within the Chargeurs corporate family. (Morgan Decl. [Dkt. No. 84] Exs. 24-25). Chargeurs' publicly filed registration document and annual report provide similar information but in even more opaque terms: they refer to Chargeurs Entoilage only as a "main fully consolidated company" and to Fitexin only as a "holding company." (*Id.* Ex. 19, at 150; *id.* Ex. 20, at 124). Meanwhile, the Infogreffe reports do not even provide that meager level of detail: they do not place Fitexin or Chargeurs Entoilage within the Chargeurs corporate structure, much less discuss those entities' involvement with the aforementioned interlining matters. (*Id.* Ex. 23). The mere fact that Fitexin and Chargeurs Entoilage reside within the Chargeurs corporate structure, absent the additional information elicited during the June 2018 depositions, could not have given rise to a basis to name them as defendants. *See IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 403 (S.D.N.Y. 2009).[7]

Instead, Chargeurs prevented Hickey Freeman from being able to discover critical information concerning Fitexin's and Chargeurs Entoilage's involvement in this case by omitting information regarding those companies from websites, marketing materials, and discovery. (Mov. Br. 5-8). Chargeurs' arguments to the contrary (Opp. 12-16) are unavailing. <u>First</u>, Mr. Abramowicz's lack of knowledge as to Chargeurs' corporate structure was not due to a purported

---

[6] The organizational chart that Chargeurs references (Opp. 9) also lacks such information—and, in any event, is not publicly available and was not produced by Chargeurs until February 26, 2018, approximately two months after the deadline for amended pleadings. (D'Angelo Decl. ¶ 16 & Ex. O).

[7] Chargeurs' cases to the contrary (*see* Opp. 11-12) are inapposite because sufficient information existed in the public record for movants in those cases to amend their pleadings earlier. *See De Malmanche v. Glenrock Asset Mgmt. Assocs., L.P.*, No. 07 Civ. 10940, 2011 U.S. Dist. LEXIS 28632, at *18 (S.D.N.Y. Mar. 16, 2011) (basis for amendment was plaintiff's registration with Financial Services Authority, which was publicly available); *Elliott v. City of Hartford*, No. 09 Civ. 948, 2012 U.S. Dist. LEXIS 112969, at *12-13 (D. Conn. Aug. 10, 2012) (basis for amendment was identity of prosecutors, which was publicly available).

failure to prepare for his deposition (Opp. 12), but rather because—as Mr. Rousseau himself admitted—CFT's marketing materials "don't present Fitexin in any way" (D'Angelo Decl. Ex. V [Rousseau Dep. Tr.] at 135:22-136:21). Because of that, as Lainiere US's President testified, "nobody has heard of Fitexin, but people have heard of Chargeurs." (*Id.* Ex. Y [Marlien Dep. Tr.] at 127:6-17). This is especially true for Mr. Abramowicz, to whom various Chargeurs representatives never disclosed the existence of Fitexin and Chargeurs Entoilage, much less their relationship to other corporate entities. (Abramowicz Decl. ¶¶ 3, 11-19).

Second, the purported "significant contact" that Hickey Freeman had with Messrs. Rousseau and Vossart (Opp. 12-13) does not demonstrate that Hickey Freeman had notice as to the basis for its motion. Although Chargeurs' submits correspondence from Hickey Freeman to Mr. Vossart regarding this case—it submits no correspondence from Mr. Vossart back to Hickey Freeman (much less correspondence with pertinent information). (Morgan Decl. Exs. 21-22, 29-31). In fact, the only response that Mr. Vossart provided was a short note cancelling his meeting with Hickey Freeman. (Abramowicz Decl. ¶ 13 & Ex. D). Although Mr. Abramowicz met with Mr. Rousseau and attended a presentation delivered by him, on neither of those occasions did Mr. Rousseau identify himself as an employee of Fitexin. (*Id.* ¶¶ 16-20). Indeed, to this day, Mr. Rousseau's business card does not identify him as being affiliated with that company. (D'Angelo Reply Decl. Ex. H).[8]

Third, the lack of references to Fitexin or Chargeurs Entoilage on Chargeurs' websites and marketing materials does <u>not</u> corroborate their lack of involvement in this case (Opp. 14-15),

---

[8] Chargeurs attempts to explain away its failure to identify Mr. Rousseau and his Fitexin affiliation in its October 30, 2017 and March 9, 2018 interrogatory responses by claiming that Mr. Rousseau was uninvolved in the investigation of the allegedly defective interlining (Opp. 13), but this argument is belied by the fact that Mr. Rousseau sent and received dozens of email communications listed on Chargeurs' privilege log about "Hickey Freeman's Allegations Concerning Interlining." (D'Angelo Decl. Ex. S.)

because Chargeurs specifically omits reference to such "legal entit[ies] when engaging in delivering a marketing and commercial promise," as Mr. Rousseau testified. (D'Angelo Decl. Ex. V [Rousseau Dep. Tr.] at 136:3-16). As Mr. Marlien confirmed, "Fitexin is just a company within CFT. The trade name that we would like to market and to profile is Chargeurs Fashion Technologies." (*Id.* Ex. Y [Marlien Dep. Tr.] at 128:21-129:11). For this same reason, the limited references to Fitexin or Chargeurs Entoilage in Chargeurs' document production (Opp. 14) is hardly surprising. Because Chargeurs has refused to produce documents within the possession of Fitexin and Chargeurs Entoilage, documents discussing those companies' involvement in critical interlining matters still have not been produced.

In sum, Hickey Freeman could not have known to name Fitexin and Chargeurs Entoilage as defendants prior to June 2018 because their involvement in interlining product development, manufacturing, quality control, marketing, strategy, and decision making is missing from Chargeurs' public registry documents, websites, marketing materials, and discovery.

**B.  Hickey Freeman Has Satisfied Rules 15 and 21**

**1.  Chargeurs Points to No Bad Faith on Hickey Freeman's Part**

Hickey Freeman has not, as Chargeurs claims, "misconstrued" testimony regarding Fitexin and Chargeurs Entoilage—and there would be no need to, as the witnesses' own words plainly demonstrate those companies' involvement in interlining product development, manufacturing, quality control, marketing, strategy, and decision making. *See supra* at 1-2 (providing direct quotes from witness testimony). Chargeurs does not even dispute the most significant facts regarding Fitexin and Chargeurs Entoilage. It does not dispute that Fitexin develops interlining products for CFT, determines where each model of interlining is manufactured, markets CFT interlining, and develops strategy for that division. Instead, Chargeurs parses Mr. Rousseau's testimony to create a false impression regarding Fitexin's and

8

Chargeurs Entoilage's activities. For example:

- Although Mr. Rousseau testified that Fitexin does not "dictate" manufacturing, quality control, and inspection "processes" (Opp. 22), he **did** testify that Fitexin handles "initial implementation" of manufacturing, quality control, and inspection "standards." (D'Angelo Decl. Ex. V [Rousseau Dep. Tr.] at 115:16-117:6).

- Although Mr. Rousseau testified that Fitexin does not "speak to" day-to-day operation of the CFT subsidiaries (Opp. 22), he **did** testify that Fitexin "supervises the day-to-day operations of CFT." (D'Angelo Decl. Ex. V [Rousseau Dep. Tr.] at 42:16-43:8).

- Although Mr. Rousseau testified that the "purpose" of Chargeurs Entoilage is not to control Fitexin (Opp. 22), he **did** testify that Chargeurs Entoilage employed Fitexin's President and the head of the CFT division. (D'Angelo Decl. Ex. V [Rousseau Dep. Tr.] 38:2-25, 39:21-25).

When properly considered, Mr. Rousseau's testimony demonstrates that Fitexin and Chargeurs Entoilage were involved in matters critical to this case—*e.g.*, how the interlining at issue was developed and for what application; why it was designated for manufacture at Lainiere Textiles in China; and what policies governed its manufacturing and inspection, and whether those policies were adequate as implemented.[9]

Although Chargeurs attempts to explain away Mr. Rousseau's admissions by reference to excerpts from Ms. Defait's testimony, those excerpts concern only *Chargeurs'* control over the CFT business—not Fitexin's or Chargeurs Entoilage's. (Opp. 19-21). Of course, Chargeurs' control or lack thereof is not probative of whether Fitexin and Chargeurs Entoilage were

---

[9] At worst, Mr. Rousseau's testimony is self-contradictory as to Fitexin and Chargeurs Entoilage, in which case the Court "cannot determine credibility or make factual findings" at this stage, *see Smith v. Johnson & Johnson*, No. 99 Civ. 10607, 2000 U.S. Dist. LEXIS 15544, at *7-8 (S.D.N.Y. Oct. 23, 2000), but instead "must resolve all doubts in Plaintiff's favor . . . includ[ing] doubts resulting from contradictory testimony provided by the same witness." *Capitol Records, Inc. v. Mp3tunes, LLC*, No. 07 Civ. 9931, 2009 U.S. Dist. LEXIS 96521, at *25-26 (S.D.N.Y. Oct. 16, 2009). The question as this stage is whether Hickey Freeman has pointed to sufficient testimony to support the addition of Fitexin and Chargeurs Entoilage as defendants. *See Circle Line Sightseeing Yachts, Inc. v. Circle Line-Statue of Liberty Ferry, Inc.*, No. 01 Civ. 9788, 2003 U.S. Dist. LEXIS 1501, at *12-13 (S.D.N.Y. Feb. 3, 2003) (where defendant opposed motion to amend by discrediting testimony cited by plaintiff, holding that defendant's "credibility arguments are more appropriately raised at trial, as it is the possibility of recovery, not its likelihood, that guides the court's analysis in deciding whether to grant leave to amend") (citation omitted). It has surpassed that hurdle.

involved in matters critical to this case. In any event, Ms. Defait's contention that "Chargeurs, S.A. does not control the management, production, or operations of its subsidiaries" is contradicted by (among other things) Chargeurs' annual report, which clearly states that "[t]he Chargeurs parent company acts as a holding company for the Group's companies, *by . . . managing central functions: the Group's business strategy, marketing strategy, financial and legal policy, control of operations, human resources policy, and communications*" (D'Angelo Decl. Ex. N, at 218)—and which Ms. Defait confirmed she reviewed and approved prior to it being filed with French regulators. (*Id.* Ex. W [Defait Dep. Tr.], at 52:12-53:4).[10]

### 2. The Proposed Amendment Will Not Give Rise to Undue Prejudice

Chargeurs does not respond to, and therefore concedes, Hickey Freeman's arguments that the proposed amendment will not give rise to undue prejudice both because it merely adds new parties, not new legal claims or theories of liability, and because Chargeurs will not be unduly surprised by the amendment given its awareness of Fitexin's and Chargeurs Entoilage's connection to its CFT division. (Mov. Br. 14-15, 17-18). As to the remaining arguments, Chargeurs' responses are unavailing.

First, that the amended complaint would be filed after the September 17 fact discovery deadline (Opp. 24) does not automatically give rise to undue prejudice. Courts routinely permit the addition of parties after the close of fact discovery. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. IDW Group, LLC*, No. 08 Civ. 9116, 2009 U.S. Dist. LEXIS 39858, at *12 (S.D.N.Y. May 12, 2009) ("the mere fact that discovery has concluded does not provide a reason for denying leave

---

[10] Furthermore, Chargeurs' attempt to manufacture a contradiction in Hickey Freeman's account of when it learned of Fitexin's and Chargeurs Entoilage's involvement in this case (Opp. 17-18) falls flat. The testimony most central to this motion was provided by Mr. Rousseau and Ms. Defait in June 2018—more than six months after the deadline for amended pleadings. Mr. Hourlier's testimony on May 31, 2018, that the product developer for Chargeurs-branded interlining works for Fitexin provided the basis for further questioning into that same subject with Mr. Rousseau and Mr. Defait days later.

to amend") (citation omitted).

<u>Second</u>, Chargeurs' claim that the amendment will result in additional delay (Opp. 24) lacks support. Other than Chargeurs' speculation, there is no indication that Fitexin or Chargeurs Entoilage actually will "retain different counsel." To the contrary, Chargeurs' current counsel represented Mr. Rousseau (a Fitexin employee) at his deposition. Similarly, although Chargeurs raises the specter of those companies "conducting discovery of [their] own," it does not identify what additional discovery would be necessary for them to defend against factual allegations that are *virtually identical* to those previously asserted. (*See* D'Angelo Decl. Ex. B, ¶¶ 17-84). In any event, the need to conduct additional discovery is not sufficient to create undue prejudice. *See Fresh Del Monte Produce, Inc. v. Fresh Del Monte Foods, Inc.*, 304 F.R.D. 170, 177 (S.D.N.Y 2014) ("allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice") (citation omitted).

<u>Third</u>, although Chargeurs claims that Lainiere France has "already [been] unfairly prejudiced" due to a purported delay in its dismissal from this action (Opp. at 24 & n.17), there has been no showing as to what that purported prejudice was.[11] Regardless, past prejudice to Lainiere France does not somehow equate to future prejudice to Fitexin and Chargeurs Entoilage.

<u>Fourth</u>, the potential for a parallel action against Chargeurs Entoilage and Fitexin favors granting the motion—not denying it—as the weight of authority shows. (Mov. Br. 18-19) (collecting cases). *H.L. Hayden Co. of NY, Inc. v. Siemens Med. Sys., Inc.*, 112 F.R.D. 417 (S.D.N.Y. 1984), cited by Chargeurs, is inapposite. (Opp. 26.) There, the court opined that a

---

[11] To the extent there was any delay, it was due to Lainiere France. On May 31, 2018, Hickey Freeman requested documentary evidence to corroborate testimony that Lainiere France did not manufacture the interlining at issue (D'Angelo Decl. Ex. T [Hourlier Dep. Tr.] at 66), but Lainiere France waited until July 13, 2018 to produce that evidence. (D'Angelo Reply Decl. ¶¶ 5-6 & Exs. D-F). Hickey Freeman transmitted a proposed stipulation of dismissal approximately 1 month later. (*Id.* Ex. G).

11

separate action could be "quickly" adjudicated because the plaintiff had already obtained discovery on a voluntary basis from the proposed defendant, and thus the separate action against that party would require no discovery at all. *See id.* at 422-23. That is not the case here, where Chargeurs has refused to turn over any Fitexin and Chargeurs Entoilage documents.[12]

## II. THE MOTION TO COMPEL SHOULD BE GRANTED

Because, as this Court has already held, Chargeurs controls Lainiere Textiles' documents, Chargeurs *a fortiori* controls the documents of Lainiere Textiles' corporate parents, Fitexin and Chargeurs Entoilage. Chargeurs ignores this fact and instead argues that Hickey Freeman does not satisfy the test for control set out in *Sicav v. Wang*, No. 12 Civ. 6682, 2014 U.S. Dist. LEXIS 81098, at *11-12 (S.D.N.Y. June 12, 2014). It is wrong.

<u>First</u>, Chargeurs' 100% ownership of Chargeurs and Fitexin, while not dispositive (Opp. 27), is nevertheless highly probative of control. *See Dietrich v. Bauer*, No. 95 Civ. 7051, 2000 U.S. Dist. LEXIS 11729, at *8-10 (S.D.N.Y. Aug. 9, 2000) (collecting cases). In addition to owning those companies, Chargeurs exercises control over them through a Supervisory Board. Chargeurs disputes that this Board have the power to remove the President of Fitexin and Chargeurs Entoilage, but Ms. Defait testified to precisely that:

---

[12] *H.L. Hayden* is inapposite for the additional reason that the motion to amend was submitted after summary judgment motions and the case was "on the eve of resolution." *See id.* at 419. By contrast, expert discovery has yet to be completed here, and the parties are months away from submitting dispositive motions.

Chargeurs' other cases (Opp. 25-26) are similarly off base. In *Olaf Sööt Design, LLC v. Daktronics, Inc.*, 299 F. Supp. 3d 395, 400 (S.D.N.Y. 2017), the court *granted* the motion to amend. The remaining cases are factually distinguishable because the movants there either sought to add new legal claims and theories to the complaint, *see Kontarines v. Mortg. Elec. Registr. Sys.*, No. 15 Civ. 2206, 2016 U.S. Dist. LEXIS 90283 (July 12, 2016); *Chepilko v. City of New York*, No. 06 Civ. 5491, 2010 U.S. Dist. LEXIS 103080 (E.D.N.Y. Sept. 8, 2010), or were made aware of the proposed defendants' involvement with the case via interrogatory responses or other written disclosures months earlier, *see Zucker v. Porteck Global Servs.*, No. 13 Civ. 2674, 2015 U.S. Dist. LEXIS 144132 (E.D.N.Y. Oct. 23, 2015); *Cintron v. Weissman*, No. 14 Civ. 0116, 2015 U.S. Dist. LEXIS 127313 (N.D.N.Y. Sept. 23, 2015); *Schnepf v. Jerome H. Siegel, P.C.*, No. 98 Civ. 1255, 1998 U.S. Dist. LEXIS 12386 (S.D.N.Y. Aug. 11, 1998).

> Q. So if someone wanted to remove Angela Chan [*i.e.*, the President of Chargeurs Entoilage and Fitexin], who would it be?
> A. As per the bylaws of Chargeurs Entoilage, those who are in power to mandate would be the supervisory board.
> Q. Supervisory board of what?
> A. The supervisory board of Chargeurs Entoilage.
> Q. Who is that composed of?
> A. Chargeurs, S.A. and Chargeurs Boissy.

(D'Angelo Decl. Ex. W [Defait Dep. Tr.] at 74:6-16). That Board controls Fitexin and Chargeurs Entoilage in other important ways, as Ms. Defait freely admitted:

> Angela Chan has to get a decision from the supervisory board and their decision on those internal issues . . . [including for] acquisitions to investments that fall above a certain threshold to changing internal auditors of the company, changes to the bylaws, in relation to the appointment of the president of the company and in relation to the company's activities, scope of activities . . . [and the appointment of the president] of any subsidiary held by the company.

(*Id.* at 106:2-107:10).[13] Additionally, Chargeurs receives financial reporting from Fitexin and Chargeurs Entoilage—and its annual report filed with French regulators confirms that it only receives such reporting for "entities that are directly or indirectly controlled by the [Chargeurs] Group." (*Id.* Ex. N, at 108 (defining "subsidiaries" whose financials are consolidated), 146 (identifying Fitexin and Chargeurs Entoilage as consolidated companies)).

Second, Chargeurs fails to rebut Hickey Freeman's factual showing that Chargeurs, Chargeurs Entoilage, and Fitexin "operate as one." It does not factually contest that all three companies are on the same liability insurance policy, share officers and directors, and work

---

[13] Chargeurs' statement that the Board met only once prior to Ms. Defait's deposition (Opp. 27) is irrelevant, since it had only existed for approximately six months by that point. (D'Angelo Decl. Ex. W [Defait Dep. Tr.] at 107:18-21). *Sicav* does not, as Chargeurs implies (Opp. 27), say anything about the number or frequency of Board meetings that are sufficient for a determination of control. In any event, that case is factually distinguishable because the parent corporation there could not "participate in its subsidiaries' decision-making" and "appear[ed] to do little, if anything, to monitor its subsidiaries' activities." *Sicav*, 2014 U.S. Dist. LEXIS 81098, at *14-15. Ms. Defait testified that the opposite is true here. (D'Angelo Decl. Ex. W [Defait Dep. Tr.] at 105:20-107:10, 176:6-177:24, 208:11-21.)

13

together on strategic, financial, and operational matters for CFT.[14] (Opp. 29). As to strategic, financial, and operational matters in particular: Chargeurs regularly meets with Fitexin and Chargeurs Entoilage to discuss acquisition plans, business strategy, budget forecasts, and the financial state of the CFT division overseen by them (D'Angelo Decl. Ex. W [Defait Dep. Tr.] at 67:7-22, 89:21-90:8), provides human resource services to CFT (*id.* at 134:7-23), advises CFT on business development and corporate and environmental responsibility (*id.* at 210:17-211:3), and steers the "general direction" of CFT (*id.* at 68:12-69:13). Rather than contest those facts, Chargeurs claims that this factor requires a showing that the parties are alter egos (Opp. 29)—but this is simply not the law. *See In re Ski Train Fire of November 11, 2000 Kaprun Aus.*, MDL No. 1428, 2006 U.S. Dist. LEXIS 29987, at *17 (S.D.N.Y. May 16, 2006) ("the tests for determining whether a corporate entity is the alter ego or a 'mere department' of another, are distinct from the issue of whether a parent has legal or practical access to its subsidiary's documents"); *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 473 (S.D.N.Y. 2000) ("a showing of control has not been limited to alter ego situations").

Third, the weight of evidence supports the conclusion that Chargeurs does, in fact, have the practical ability to obtain Fitexin and Chargeurs Entoilage documents. Chargeurs does not require a court order to obtain those documents (Opp. 29): as Ms. Defait testified, Chargeurs could ask Angela Chan for them and, if she refused, "chang[e] the president of Chargeurs Entoilage"; or, "[i]n actual deed, in fact, Chargeurs, S.A. could ask an[other] employee of Fitexin" for the documents. (D'Angelo Decl. Ex. W [Defait Dep. Tr.] at 101:9-102:21, 108:23-

---

[14] For example, Chargeurs regularly meets with Fitexin and Chargeurs Entoilage to discuss acquisition plans, business strategy, budget forecasts, and the financial state of the CFT division overseen by them (D'Angelo Decl. Ex. W [Defait Dep. Tr.] at 67:7-22, 89:21-90:8), provides human resource services to CFT (*id.* at 134:7-23), advises CFT on business development and corporate and environmental responsibility (*id.* at 210:17-211:3), and steers the "general direction" of CFT (*id.* at 68:12-69:13).

14

109:12). Furthermore, and putting aside the plausibility of Chargeurs' claim that it "did not produce Mr. Rousseau for deposition" because "he voluntarily agreed" to appear (Opp. 29 n.18), Chargeurs does <u>not</u> dispute that Mr. Rousseau *is the individual within the Chargeurs Group primarily responsible for handling this litigation.* (Mov. Br. 23). Chargeurs cannot possibly claim that it does not exert control over Fitexin when it has tasked a Fitexin employee with this weighty responsibility. In that role, Mr. Rousseau helped direct document collection in this litigation, and in addition to speaking to "one employee of Wujiang" to gather documents (Opp. 29), he also provided collection instructions to the head of IT for CFT—yet another Fitexin employee. (D'Angelo Decl. Ex. V [Rousseau Dep. Tr.] at 344:2-345:6; *see id.* at 284:21-285:15 (identifying head of IT as a Fitexin employee).)

These facts and the facts set forth in the moving brief are sufficient to demonstrate that Chargeurs exercised control over Fitexin and Chargeurs Entoilage, even absent a finding of agency. (*See, e.g., id.* Ex. AA [Apr. 19 Conf. Tr.], at 10-11 (finding Chargeurs controls Lainiere Textiles absent finding of agency)). But there is evidence of an agency relationship as well: among other things, Chargeurs' annual report repeatedly discusses how Chargeurs carries out its business activities *through* its four divisions, including CFT headed by Fitexin and Chargeurs Entoilage. (*E.g., id.* Ex. N, at 4 ("Chargeurs is playing a key role in each of its four businesses"), 16 (Chargeurs has "leading positions in the markets for . . . garment interlinings"), 23 (referring to "unfailing support of [CEO] Michaël Fribourg and the Chargeurs teams" to CFT), 52 ("The Group is organized around a lean head office that oversees four business lines," including CFT).

## CONCLUSION

For the foregoing reasons and the reasons stated in Hickey Freemans' moving brief, the motion for leave to amend the Complaint and to compel discovery should be granted.

Dated: New York, New York
September 28, 2018

                                      LOEB & LOEB LLP

                                      By: */s/ Frank D'Angelo*
                                           Wook Hwang
                                           Frank D'Angelo
                                           345 Park Avenue
                                           New York, New York 10154-1895
                                           (212) 407-4000

                                    *Attorneys for Plaintiff Hickey Freeman Tailored Clothing, Inc.*

                                                                               16847577.3